**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JACQLYN SMITH, *Plaintiff-Appellant*, | No. 11-17398 |
| v. | D.C. No. 2:09-cv-02142-RLH-LRL |
| CLARK COUNTY SCHOOL DISTRICT, *Defendant-Appellee*. | OPINION |

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, Senior District Judge, Presiding

Argued and Submitted
May 6, 2013—San Francisco, California

Filed August 21, 2013

Before: William A. Fletcher, Ronald M. Gould,
and Morgan Christen, Circuit Judges.

Opinion by Judge Gould

# SUMMARY[*]

## Employment Discrimination

The panel affirmed in part and reversed in part the district court's judgment in favor of an employer on claims of disability discrimination and failure to accommodate under the Americans with Disabilities Act of 1990.

The panel held that the district court did not abuse its discretion by granting the employer's motion for reconsideration of an order denying summary judgment because in that order the court committed a clear error of law by not applying controlling Supreme Court precedent.

The panel held that, in deciding whether the plaintiff was a "qualified individual" under the ADA, the district court did not properly apply the framework set forth in *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999), for analyzing the effect of inconsistent statements on applications for disability benefits. The panel concluded that claims for disability retirement, disability leave under the Family and Medical Leave Act, and private insurance disability benefits do not inherently conflict with an ADA claim because they do not account for an applicant's ability to work with a reasonable accommodation. In addition, the panel held that, viewing the facts in the light most favorable to the plaintiff, she had offered sufficient explanations for her inconsistent statements in her prior benefit applications so that her case could proceed past summary judgment. Therefore, the panel

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

held that the district court erred in granting summary judgment for the employer, and reversed and remanded for further proceedings.

**COUNSEL**

Michael P. Balaban (argued), Law Offices of Michael P. Balaban, Las Vegas, Nevada, for Plaintiff-Appellant.

S. Scott Greenberg (argued), Clark County School District, Office of General Counsel, Las Vegas, Nevada, for Defendant-Appellee.

**OPINION**

GOULD, Circuit Judge:

Jacqlyn Smith appeals the district court's order granting summary judgment in favor of Clark County School District on Smith's claims for disability discrimination and failure to accommodate under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101–12213. *See Smith v. Clark County* (*Smith II*), No. 2:09-cv-2142, 2011 WL 4007532 (D. Nev. Sept. 8, 2011) (unpublished). Smith argues (1) that the district court abused its discretion by granting the School District's motion for reconsideration of its initial order denying summary judgment; and (2) that the district court erred by granting summary judgment under *Cleveland v. Policy Management Systems Corporation*, 526 U.S. 795 (1999). We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

**I**

Smith worked in the Clark County School District from 1992 to 2008. She first taught elementary school. But in 2001, Smith had a back injury that limited her mobility and led her to pursue a less physically demanding job within the school setting. Literary specialist fit the bill. Literary specialists train and assist elementary school teachers with teaching and testing student literacy skills, but literary specialists are not responsible for all of the duties needed to teach a class of students. Smith earned her literary-specialist certification in 2004 and took a job as a literary specialist in the School District. Smith remained a literary specialist in the School District until 2008. Between 2004 and early 2008, Smith received positive reviews for her work as a literary specialist.

In March 2008, the principal at Kesterson Elementary School told Smith that she would be reassigned to teach kindergarten for the 2008–2009 school year. Smith objected, asking to remain in her literary-specialist position because her back injury prevented her from teaching. According to Smith, she could not perform the "standing, bending, [and] stooping required to be an effective kindergarten or elementary school teacher." Shortly after this meeting, Smith aggravated her back while sorting boxes at work, and she was unable to work as a literary specialist for the rest of the school year. During the next few months, Smith applied for family medical leave and disability benefits. These applications are at the heart of this appeal.

On April 21, 2008, Smith filed a request for leave under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601–2654. On the request form, Smith's

doctor explained that Smith was "presently incapacitated" and could not "work at all until released by [a] doctor." In May 2008, Smith applied for and began receiving private disability benefits through American Fidelity Assurance Company. In her application for these benefits, Smith stated that her "dates of total disability" ranged from March 31, 2008 to "Not Sure." Two months later, Smith sought an extension to her FMLA benefits and filed an updated form with her doctor's statement that Smith was "presently incapacitated," would "be out of work indefinitely," and could do "no work of any kind until released by a doctor."

In late August, Smith applied for disability retirement under the Nevada Public Employees' Retirement Systems (PERS) on the basis that she could not perform the duties required for her current job as a kindergarten teacher, including standing for long periods of time, bending, stooping, walking, lifting, and reaching. She also explained that she could not perform the lifting, bending, and stooping required for her former job as a literary specialist, but she could sit to work. Her doctor certified that Smith was "unable to work due to injury or mental or physical illness." The Nevada Retirement Board approved Smith's application for "total and permanent disability" in October 2008.

During this time, Smith was embroiled in heated and unhappy discussions with the School District over whether she could work as a kindergarten teacher and how the School District should accommodate her disability. Smith insisted that she could not teach in the classroom and repeatedly asked that the school district accommodate her disability by keeping her in the literary-specialist position or by transferring her to another non-teacher position within the School District, such as a project facilitator. The School District was adamant,

however, that Smith could not remain in the literary-specialist position and that transferring Smith to another position was not a reasonable accommodation. Instead, the School District offered several accommodations for the kindergarten-teacher position, including a special chair that would reduce Smith's need to bend and stoop and a full-time classroom aid to help with lifting and to minimize Smith's movement. After an extended stalemate, the parties failed to reach an agreement. Smith resigned from the School District at the end of September 2008, so she could receive PERS disability retirement. Smith takes the position that she did not want to start disability retirement, but felt she had no choice because she could not work as a kindergarten teacher and she had used all of her sick leave.

Smith sued the School District in the United States District Court for the District of Nevada, alleging that the School District violated the ADA by discriminating against Smith and by not providing reasonable accommodation. The School District moved for summary judgment, asserting (1) that Smith was not a "qualified individual" under the ADA because she had represented on her applications for disability benefits that she was permanently disabled; and (2) that the School District did not deny Smith a reasonable accommodation. Initially, the district court denied summary judgment, concluding that triable issues of fact remained as to both issues. *Smith v. Clark County* (*Smith I*), 2:09-cv-2142, 2011 WL 1576894, at \*4–5 (D. Nev. Apr. 26, 2011) (unpublished). The School District moved for reconsideration on the qualified-individual issue, which the district court granted, finding that it had committed clear error by not considering whether Smith had offered a sufficient explanation for the inconsistencies between her ADA claim and her PERS application. *See Smith II*, 2011

WL 4007532, at *1–2.  Concluding that Smith had not sufficiently explained the inconsistences, the district court granted summary judgment for the School District because Smith's ADA action was irreconcilable with her PERS disability retirement.  *Id*. at *2–3.  Smith appealed.

## II

We review for abuse of discretion the district court's decision to grant or deny a motion for reconsideration.  *See SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1100 (9th Cir. 2010).  We review *de novo* the district court's grant of summary judgment.  *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  "Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."  *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (quoting *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011)).  As we explain below, under *Cleveland*, 526 U.S. 795, we apply this summary-judgment standard, and thus *de novo* review, to determine the sufficiency of a plaintiff's explanation for his or her inconsistent claims for disability benefits.

## III

We must determine (A) whether the district court abused its discretion by granting the motion for reconsideration, and, if not, (B) whether the district court erred by granting summary judgment in favor of the School District.  We conclude that district court did not abuse its discretion by reconsidering its initial summary-judgment order, but that it

erred by granting summary judgment in favor of the School District.

To state a prima facie case under the ADA, Smith must show (1) that she is disabled within the meaning of the ADA; (2) that she is a qualified individual with a disability; and (3) that she was discriminated against because of her disability. *See Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). A qualified individual with a disability is defined as "an 'individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Id.* (quoting 42 U.S.C. § 12111(8)). This case turns on whether Smith's claims for disability benefits negate her ability to prove that she is a qualified individual under the ADA.

## A

The district court did not abuse its discretion by reconsidering its prior order. A district court may properly reconsider its decision if it "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 2003). Clear error occurs when "the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Here, the district court found that it had committed clear error by not considering whether Smith gave a sufficient explanation for the conflict between her ADA claim and her

PERS application under the Supreme Court's decision in *Cleveland*. *See Smith II*, 2011 WL 4007532, at \*1–2. In its initial order, the district court did not mention *Cleveland*, and instead analyzed whether the School District had conclusively shown that Smith was permanently disabled. *See Smith I*, 2011 WL 1576894, at \*4. As we explain below, *Cleveland* sets the framework for analyzing how inconsistent statements on applications for disability benefits affect an ADA claim. Because it is a clear error of law to not apply controlling Supreme Court precedent, we conclude that the district court did not abuse its discretion by reconsidering its prior order.

It is common for both trial and appellate courts to reconsider and change positions when they conclude that they made a mistake. This is routine in judging, and there is nothing odd or improper about it. A trial court may reconsider and reach a conclusion contrary to an earlier decision, and a paradigmatic example of when this should be done is when the court made its prior decision without considering the legal standards in a controlling opinion, such as the *Cleveland* opinion from the United States Supreme Court.

**B**

Smith next asserts that summary judgment was inappropriate because *Cleveland* does not apply to her claim, and even if it does, she has provided an explanation for her inconsistent statements sufficient to overcome a motion for summary judgment. We reject Smith's contention that *Cleveland* is inapplicable. But we agree that Smith has offered a sufficient explanation for her inconsistent statements so that her case may proceed past summary judgment.

In *Cleveland*, the Supreme Court considered "the legal effect upon an ADA suit of the application for, or receipt of, disability benefits." 526 U.S. at 800. Carolyn Cleveland applied for Social Security Disability Insurance (SSDI) before filing her ADA suit against her former employer. *Id*. at 798–99. To determine the legal effect of Cleveland's SSDI claim upon her ADA claim, the Supreme Court engaged in a two-part analysis. First, it determined whether, as a legal matter, a claim under the ADA "inherently conflict[s]" with an SSDI claim to warrant a "negative presumption" against the ADA claim. *Id*. at 802; *see also id*. at 802–05. Second, after finding no inherent conflict, the Court analyzed whether Cleveland's SSDI claim "genuinely" conflicted with her ADA claim so as to "negate an essential element of her ADA claim." *Id*. at 805–06. Where genuine conflict exists, the Court held that a plaintiff could overcome summary judgment by offering a sufficient explanation for any inconsistency. *Id*. at 806; *see also Solomon v. Vilsack*, 628 F.3d 555, 561–62 (D.C. Cir. 2010) (explaining *Cleveland*'s two-part analysis).[1]

Smith advocates for a narrow reading of *Cleveland* that limits its application to inconsistencies between ADA claims and SSDI claims. The reasoning and the language of *Cleveland* supports a broader application. Although the decision considered only SSDI disability benefits, it

---

[1] The Supreme Court emphasized that its decision did not consider "directly conflicting statements about purely factual matters, such as 'The light was red/green,' or 'I can/cannot raise my arm above my head.'" *Cleveland*, 526 U.S. at 802; *see also id*. at 807. Although the parties contest the application of *Cleveland*, neither argues that Smith's inconsistent statements were about "purely factual matters." We agree that Smith's conflicting representations are similar to the statements implying "context-related legal conclusion[s]" addressed in *Cleveland*. *Id*. at 802.

repeatedly referred to the legal impact of any application for, or receipt of, disability benefits on a plaintiff's ADA suit. *See Cleveland*, 526 U.S. at 800, 806, 807.  In recognition of this broad language, we have applied *Cleveland*'s standard to determine whether a plaintiff's statements in her applications for state and private disability benefits genuinely conflicted with her ADA claim.  *See Norris v. Sysco Corp.*, 191 F.3d 1043, 1048–49 (9th Cir. 1999).  Our sister circuits have also applied *Cleveland* to determine the legal effect of applications for Federal Employee Retirement System benefits and state-police pension benefits.  *See Solomon*, 628 F.3d at 561–62; *Butler v. Vill. of Round Lake Police Dep't*, 585 F.3d 1020, 1023 (7th Cir. 2009); *see also Detz v. Greiner Indus., Inc.*, 346 F.3d 109, 117 (3d Cir. 2003) ("While *Cleveland* only specifically addressed a conflict between SSDI and ADA claims, the analysis is not limited in its application to cases involving those particular statutory and administrative schemes.").  *Cleveland* is likewise applicable here to determine the legal effect of Smith's disability benefit claims on her ADA action.[2]  *See Solomon*, 628 F.3d at 561.

Under *Cleveland*'s framework, we must first determine whether claims for PERS disability retirement, FMLA disability leave, or private insurance disability benefits inherently conflict with an ADA claim.  *See Solomon*, 628 F.3d at 561. We conclude that they do not. As with the

---

[2] Smith also raises a temporal argument, contending that *Cleveland* is distinguishable because Smith filed her PERS claim after the School District made the relevant decision about accommodation.  The record does not support this argument.  Smith continued to communicate with the school district about accommodation up until the time she filed for PERS benefits.

SSDI claim considered in *Cleveland*, 526 U.S. at 802–03, there are situations in which PERS, FMLA, and private insurance disability claims can coexist with an ADA claim. Because none of these applications account for an applicant's ability to work with reasonable accommodation, it is possible that a person could claim he or she qualifies for disability benefits and still be able to work if accommodated. *See id*. For example, the PERS statute requires an applicant to be "totally unable" to perform his or her current job or any comparable job, but neither the statute nor the application requires a beneficiary or applicant to say that he or she is unable to work even with reasonable accommodation. *See* Nev. Rev. Stat. § 286.620(1). Smith's ADA suit claiming that she can perform her job with reasonable accommodation could prove consistent with her disability-benefit applications stating that she could not perform her job without it. *See Cleveland*, 526 U.S. at 803.

The School District makes much of the fact that the PERS application contained a space for Smith's doctor to explain Smith's ability to work in a limited capacity. None was stated. But this is not enough to make the receipt of PERS benefits inherently inconsistent with an ADA claim. Asking if a person can work in a limited capacity is not the same as asking if that person can work with reasonable accommodation. Were we to accept the position that an application for disability retirement prohibits the applicant from bringing an ADA claim against his or her employer, we would essentially "grant immunity" to employers who succeeded in forcing employees to accept disability retirement by denying them reasonable accommodation for their disabilities. *Solomon*, 628 F.3d at 564.

Also, a situation could arise in which a person makes a representation on one of these disability-benefit forms about his or her present ability that differs from his or her ability at the time of the relevant employment decision. *See Cleveland*, 526 U.S. at 805. There is no inconsistency between being totally disabled at a particular point in time and in not being totally disabled at a later point in time. Both the FMLA and the American Fidelity benefits applications contemplate an end to the applicant's inability to work by asking when the applicant anticipates returning to work. And although a PERS application requires a more permanent disability, neither the applicant nor the applicant's doctor is required to say that the applicant can never work again. Rather, both applicant and doctor are asked present-tense questions about whether the applicant "can" perform her current or former job or whether she "is unable" to work. Because there may be circumstances in which the application for, or receipt of, benefits from PERS, FMLA, or private disability benefits could coexist with an ADA claim, we will not apply a conclusive negative legal presumption against Smith's ADA claim. *See Cleveland*, 526 U.S. at 803, 805.[3]

That said, certain statements made by Smith and her doctors on her PERS and her FMLA benefit forms appear to conflict with Smith's ADA claim. *See id*. at 805.[4] To prevail

---

[3] In our pre-*Cleveland* jurisprudence, we similarly rejected a per se rule of judicial estoppel that would automatically bar an ADA claimant from bringing suit if he or she applied for or received disability benefits. *See Johnson v. Oregon*, 141 F.3d 1361, 1367 (9th Cir. 1998).

[4] The School District also contends that Smith's representation that she was "totally disabled" on her American Fidelity benefit form is genuinely inconsistent with her ADA claim. Although it is true that Smith marked on her May 2008 benefits form that she had been totally disabled since

on her ADA claim, Smith bears the burden of proving that she is a qualified individual who can perform the essential functions of a particular job. *Cleveland*, 526 U.S. at 806. Smith's statements in her applications for PERS and FMLA benefits, along with those of her doctors, "appear to negate" this essential element of her claim. *Id*. Her PERS application states that Smith "is unable to work" and that she could not perform her current or any comparable job. For this application to be approved, Smith also had to show that she could not perform the job she held in the past year—her position as literary specialist. *See* Nev. Rev. Stat. § 286.620(1)(c). Similarly, on the FMLA application, Smith's doctor wrote that Smith could do "no work at all until released by [a] doctor."

These statements cast some doubt on Smith's ability to prove that she is a qualified individual who could work with or without accommodation, especially when Smith insisted that she be allowed to remain in her literary-specialist position. However, summary judgment adverse to Smith is inappropriate if she has given sufficient explanation for inconsistencies in her prior benefits applications. We consider whether, viewing the facts in the light most favorable to Smith, her explanations are sufficient to avoid summary judgment.

We conclude that this question should be reviewed *de novo* because it is a legal conclusion about whether the

---

March 31, 2008, she stated two lines later that she planned to return to work in August or September 2008. Because Smith said that she intended to return to work around the time that she would have started as a kindergarten teacher, we do not consider this application to be inconsistent with Smith's ADA claim.

inconsistency made it appropriate to grant summary judgment, and we traditionally review summary judgment decisions *de novo*. As we previously noted, *Cleveland* requires us to apply the summary-judgment standard to determine whether "in light of the prior statements made by a plaintiff when [s]he was seeking disability benefits, . . . a reasonable juror [could] find in [h]er favor on [h]er ADA claim." *Norris*, 191 F.3d at 1049. In doing so, we look at the facts in the light most favorable to the plaintiff. We took a similar approach to reviewing claims of inconsistency before *Cleveland*. *See Fredenburg v. Contra Costa Cnty. Dep't of Health Servs.*, 172 F.3d 1176, 1179 (9th Cir. 1999) (explaining the court's "clear preference" to review inconsistent statements "along with other evidence to see whether they were so damaging that no rational trier of fact could rule in the plaintiff's favor").

The School District argues that Smith has not provided a sufficient explanation for these inconsistencies. It contends that Smith cannot reconcile her representation that she could not work as a literary specialist with her repeated requests to remain in the literary-specialist position as a reasonable accommodation. The district court likewise concluded that Smith had not given a sufficient explanation to reconcile these inconsistencies. *Smith II*, 2011 WL 4007532, at *2–3. We disagree.

*Cleveland*'s sufficient-explanation standard is not an exceedingly demanding one. It "gives ADA plaintiffs wide latitude to overcome apparent conflicts" between their disability applications and their ADA claims. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 333 (2d Cir. 2000). But plaintiffs cannot ignore the inconsistencies between their claims either. To defeat summary judgment, a plaintiff must

give an explanation that is sufficient for a reasonable juror to conclude "that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" *Cleveland*, 526 U.S. at 807.

Under this standard, we conclude that Smith gave sufficient explanations for the inconsistencies between her ADA claim and her PERS and FMLA applications to survive summary judgment. Smith explains that her FMLA applications requested temporary disability leave and were not an admission of permanent inability to work. Although brief, this explanation is sufficient to warrant a reasonable juror to conclude that Smith could perform the essential functions of either a classroom teacher or a reassigned position with or without reasonable accommodation. *See Norris*, 191 F.3d at 1047, 1049 (finding sufficient plaintiff's explanation that when she and her doctor said plaintiff was disabled they meant "that she could not engage in her regular occupation at that time"). Because "the nature of an individual's disability may change over time," *Cleveland*, 526 U.S. at 805, it is possible that Smith could have been completely incapacitated in April, or even August, but still able to work with or without accommodation during the 2008–2009 school year. Even if Smith had not recovered by the beginning of the school year, it may have been reasonable for the School District to accommodate Smith's disability through an extended leave of absence. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135 (9th Cir. 2001) ("A leave of absence for medical treatment may be a reasonable accommodation under the ADA.").

A reasonable juror could likewise find that Smith's PERS application is consistent with her ADA action.  Smith explains that the PERS application did not account for her ability to perform the literary-specialist position with the accommodation that she be able to sit down regularly or lie down when needed.  This explanation is consistent with Smith's PERS application in which she stated that she could perform the "sitting" duties of the literary-specialist position. It is also consistent with Smith's assertions, including in her complaint, that she could work as a literary specialist because it allowed her to sit during the day and it was not as physically demanding as teaching kindergarten.  Her doctor's note dated May 1, 2008, which requests that Smith "be kept in her present position as a literary specialist where minimal physical exertion is required," also supports this explanation. A reasonable juror could reconcile the apparent inconsistency between Smith's PERS application and her claim that she is a qualified individual under the ADA.  *See Cleveland*, 526 U.S. at 807 (accepting Cleveland's explanation that her SSDI application did not account for the effect of reasonable accommodation on her ability to work).

Smith further explains that her PERS application is not inconsistent with her request to be accommodated through reassignment to a vacant project-facilitator position.  A person can be a qualified individual under the ADA if "[s]he can 'perform the essential functions of a reassignment position, with or without reasonable accommodation, even if [she] cannot perform the essential functions of the current position.'" *Dark v. Curry Cnty.*, 451 F.3d 1078, 1089 (9th Cir. 2006) (quoting *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 892 (9th Cir. 2001)).  Nothing in the record shows that Smith or her doctor represented that Smith could not work as a project-facilitator if reassigned to that position.

So, even setting aside the question of Smith's ability to perform the duties of a literary specialist, a reasonable juror could find that Smith is a qualified individual because she could perform the essential functions of a different reassigned position.

We hold that, viewing the facts in the light most favorable to Smith, a reasonable juror could conclude that Smith's applications for disability benefits are consistent with her ADA claim. The statements relied upon by the School District may be admitted in evidence and weighed by the jury, but they should not be preclusive of Smith's claim at the summary-judgment stage. Because triable issues of fact remain, the district court erred by granting summary judgment for the School District.[5] We reverse and remand for proceedings consistent with this opinion.

The parties shall bear their own costs.

**AFFIRMED IN PART; REVERSED IN PART.**

---

[5] Clark County urges us to affirm on the alternate ground that Smith was not denied reasonable accommodation. We decline to do so. We agree with the district court that genuine issues of material fact exist as to whether Smith or the School District proposed reasonable accommodations that would allow Smith to retain employment. *See Dark*, 451 F.3d at 1088–91 (concluding summary judgment was inappropriate when plaintiff showed his proposed accommodations, including reassignment, were reasonable on their face).