**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. CC-18-1279-STaL |
| | CC-18-1280-STaL |
| COMMERCIAL SERVICES BUILDING INC., | CC-18-1281-STaL |
| | (Related Appeals) |
| Debtor. | Bk. No. 8:09-bk-20845-ES |
| THE BASCOM GROUP, LLC, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| DOUGLAS J. PATRICK, | |
| Appellee. | |

Argued and Submitted on May 23, 2019
at Pasadena, California

Filed – June 5, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

Honorable Erithe A. Smith, Bankruptcy Judge, Presiding

———

Appearances:    Thomas J. Polis of Polis & Associates argued for appellant;  Sean A. O'Keefe of O'Keefe & Associates Law Corporation, PC argued for appellee.

———

Before: SPRAKER, TAYLOR, and LAFFERTY, Bankruptcy Judges.

**INTRODUCTION**

In these three related appeals, appellant The Bascom Group, LLC ("Bascom") seeks review of the bankruptcy court's order sustaining Douglas J. Patrick's objection to Bascom's proof of claim in the approximate amount of $2,000,000.00. Patrick is one of the principals of chapter 7[1] debtor Commercial Services Building Inc. ("CSBI"). He also asserts that he is one of its creditors.

The bankruptcy court disallowed Bascom's claim because it determined that Bascom failed to present evidence of all the essential terms of a contract with CSBI. On appeal, Bascom has not challenged the principal ground on which the bankruptcy court disallowed the claim. Rather, it focuses on the statute of frauds and the parties' disagreement as

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

to whether Bascom actually advanced any money to CSBI or for its benefit. Neither of these arguments are relevant to the controlling contract formation issue.

Bascom also has appealed the bankruptcy court's order denying its motion for reconsideration of the claims order under § 502(j) and Rule 3008. Once again, nothing in Bascom's appeal from this order addresses the contract formation issue. Instead, this appeal focuses on roughly 600 pages of additional documentary evidence Bascom sought to present with its reconsideration motion. None of this additional evidence was presented to the court or produced during discovery in the claim objection proceeding.

Bascom contends that the additional evidence demonstrated that Patrick perjured himself in his declarations in support of his claim objection. While Bascom raises a serious accusation, it fails to adequately explain why the alleged perjury justifies reconsideration. Nothing in the reconsideration motion or on appeal demonstrates why Bascom did not confront Patrick's supposed falsehoods in its opposition to the claim objection or raise the issue during the hearing on the claim objection. Moreover, nothing links the supposed falsehoods to the court's controlling contract formation ruling. The court made it clear at the claim objection hearing that it was not considering Patrick's evidence. Rather, the court repeatedly stated that its claim objection ruling was driven by the absence of evidence from Bascom establishing the formation of a contract.

The third and final order on appeal granted Patrick's motion in limine to exclude all of the new documentary evidence accompanying Bascom's reconsideration motion. As explained above, consideration of this evidence would not have justified reconsideration of the order disallowing Bascom's claim. Because the exclusion of this evidence did not prejudice Bascom, we cannot and will not disturb this evidentiary ruling on appeal.

Accordingly, we AFFIRM all three orders on appeal.

## FACTS

On October 7, 2009, four alleged creditors of CSBI filed an involuntary chapter 7 petition against CSBI. Bascom was one of those four creditors. CSBI did not timely oppose the petition. Consequently, an order for relief was entered on February 19, 2010.

In 2010, Bascom filed its initial proof of claim and two amended proofs of claim. In the initial proof of claim and the first amended proof of claim, Bascom did not include any information or supporting documentation explaining how or when the debt had accrued, other than to state on the face of the proof of claim that the debt was for money loaned or advanced.[2] In contrast, the second amended proof of claim included a

---

[2] The parties to this appeal have not included in their excerpts of record all of the prior versions of Bascom's proof of claim. However, we can and do take judicial notice of these court filings and the other documents referenced in the bankruptcy court's case docket. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957–58 (9th Cir. 1989).

spreadsheet, which indicated that the alleged "loan" consisted of accounts payable that arose over time from a variety of different transactions between CSBI and Bascom.

Patrick submitted a declaration with his claim objection. In it, he identified himself as CSBI's vice president and majority shareholder. Patrick stated that he and CSBI's other shareholder managed the company's affairs from 2000 to 2009. According to Patrick, CSBI entered into a series of construction management contracts with affiliates of Bascom. By way of these contracts, Patrick maintained that CSBI agreed to supervise and manage renovation work on multi-family residential properties owned by the Bascom affiliates.

Notwithstanding Bascom's allegations to the contrary, Patrick insisted that CSBI did not owe any money to Bascom as a result of CSBI's construction management work for the Bascom affiliates. As Patrick stated:

> 14. The debt alleged in the POC was never incurred by CSBI. CSBI never borrowed funds from Bascom.
>
> 15. At one point in time Bascom deposited money into a lockbox account that remained under Bascom's control and these funds were used to pay vendor claims that were outstanding against certain [Bascom affiliates]. These funds were not loaned to CSBI.

Patrick Decl. (May 10, 2018) at ¶¶ 14-15.

After Patrick filed his claim objection, Bascom filed its third

5

amended proof of claim. Like the three prior versions of its proof of claim, Bascom alleged that it had loaned CSBI roughly $2 million. Unlike the three prior versions of its proof of claim, Bascom alleged for the first time in its 2018 third amended proof of claim that the loan arose from a single transfer of funds that occurred on June 6, 2008.

The same day Bascom filed its third amended claim, it also filed a response to Patrick's claim objection. The response included the declaration of David Kim, who identified himself as Bascom's managing partner. According to Kim, CSBI borrowed $2,100,000.00 from Bascom on June 6, 2008. Kim stated as follows:

> 6. On June 6, 2008, at the request of Commercial Services Building, Inc. ("CSBI") Bascom loaned $2,100,000 to CSBI. The $2,100,000 loan was memorialized by written email exchanges between representatives of Bascom and CSBI. Specifically, CSBI's Chief Financial Officer/Controller, Duane Thompson was copied on the various June 6, 2008 email exchanges confirming that Bascom's $2,100,000 advance to the Debtor was in fact a loan to the Debtor whereby Bascom had at all times the expectations of repayment. True and correct copies of the relevant June 6, 2008 email exchanges between Bascom's and the Debtor's representatives are attached hereto as Exhibit "A".

Kim Decl. (June 26, 2018) at ¶ 6.

The emails are attached as exhibits to Kim's declaration, but they are far from clear regarding the nature and purpose of the $2,100,000.00 transfer of funds. To begin with, none of the emails are directly between

6

Bascom and CBSI. The emails generally reflect Kim's instructions for the transfer of the funds from Bascom's checking account into another Wells Fargo Bank Account: Account Number xxx-xxx-3522. The main email in the chain reads:

> Ninette,
> When you have a chance, please transfer $2,100,000
> from BG's checking account [xxxx-xxx-xxx] to
> account Number [xxx-xx-3522].
> Thank you. David
>
> Milton,
> Please view this as a loan receivable from
> Commercial Services Building, Inc - Lock Box
>
> david

The above email from Kim was sent to Nicholas Genesta, who is identified in the other emails as Bascom's Acquisitions Manager. The first person referenced in the email is Ninette Saati, who is identified in the other emails as a Wells Fargo Bank branch manager. The reference to "Milton" is to Bascom's outside accountant, Milton A. Daley. Neither Ninette nor Daley were listed as recipients of the main email, though it appears that Kim may have forwarded the email to Ninette.

Kim copied this email to four other people. The only CSBI employee to receive the email was Duane Thompson. Kim asserted in his declaration that Thompson was CSBI's chief financial officer and controller. The only

7

other email that included Thompson was Kim's email to Genesta later that day stating that the $2,100,000 transfer was done. Kim copied Thompson on this email as well.

As part of his reply in support of his claim objection, Patrick filed a second declaration. In it, Patrick stated that Thompson never was CSBI's chief financial officer, never was an officer of CSBI, and never had corporate authority to enter into loan transactions on behalf of CSBI. According to Patrick, Thompson merely was a CSBI employee who worked in the department that reviewed and approved payments to vendors who worked on properties owned by the Bascom affiliates. In addition, Patrick reiterated in his second declaration that vendor goods and services provided to renovate the Bascom affiliates' properties were undertaken for the benefit of the Bascom affiliates and that CSBI had no obligation to fund or pay for the vendors' services.

As for the lockbox account referenced in Kim's declaration, Patrick explained that Bascom set up this account as a means of controlling payments owed to the Bascom affiliates' vendors. Patrick posited that any "loan" arising from the funds Bascom transferred to the lockbox account would have been owed by the Bascom affiliates and not CSBI, because "Bascom was merely funding the bills of the [Bascom affiliates]." Second Declaration of Douglas J. Patrick (July 3, 2018) at ¶ 20.

In conjunction with his reply, Patrick also submitted the declaration

8

of his counsel Michael N. Nicastro. Nicastro's declaration concerned a request for production of documents his law firm served on Bascom in May 2018. Among other things, the document production request sought production of all documents and electronically stored information supporting Bascom's allegation that CSBI owed it roughly $2,000,000.00. In response to most of the document requests, Bascom made an identical statement: that the only responsive documents were attached to its third amended proof of claim and to its response to the claim objection. In turn, the only documents attached to the third amended proof of claim and the claim objection response were the series of emails discussed above regarding Bascom's June 6, 2008 transfer of funds.

At Bascom's request, the hearing on the claim objection was continued from June 21, 2018 to July 10, 2018. At the continued hearing, the bankruptcy court voiced its concern that there was no evidence that Bascom and CBSI had entered into a contract or that they had reached agreement as to loan terms. The following exchange between the court and Bascom's counsel is representative of the court's concerns:

> THE COURT: I started this [hearing] out by asking you, how do I make a finding regarding what the contract was, that there was a contract and what the exact terms of the contract were because your client has calculated interest yet I don't see anything -- as a matter of fact his declaration doesn't even say what the interest rate is, does it?

MR. POLIS: There's a paragraph in his declaration that says what the interest rate is.

THE COURT: And how do I know that was agreed to –

MR. POLIS: And again, your Honor –

THE COURT: -- because there is no contract. That's the point.

Hr'g Tr. (July 10, 2018) at 4:15-5:3.

According to the court, it did not need to weigh any evidence, or assess witness credibility, or hold an evidentiary hearing, because there was no evidence to support Bascom's allegation that the parties entered into a contract. Nor did Bascom present any controverting evidence to counter Patrick's explanation of the nature and purpose of the lockbox arrangement and how that arrangement did not result in a debt owed by CSBI to Bascom.[3]

---

[3] At both the hearing and in its subsequently entered order sustaining the claim objection, the court also spoke about the absence of a writing memorializing the loan and the application of the statute of frauds to the loan transaction. The court expressly adopted CSBI's assertions that the statute of frauds applied and that the alleged loan transaction was unenforceable against CSBI because Bascom had not produced any writing sufficient to evidence the loan and its essential terms. Even so, our analysis and resolution of this appeal turns on the issue of contract formation and the bankruptcy court's determination that Bascom presented no evidence tending to show that the parties objectively manifested their mutual assent to the same essential terms. Though Bascom, in its appeal brief, addressed at length the statute of frauds issue, it did not address at all the contract formation issue or the bankruptcy court's determination that Bascom had presented no evidence that would support its position on contract formation.

On July 20, 2018, the court entered its order sustaining CSBI's claim objection and disallowing in full Bascom's proof of claim. On August 2, 2018, Bascom filed a motion requesting reconsideration of the court's ruling. Bascom asserted that the bankruptcy court's ruling was unjustly based on Patrick's perjured testimony. According to Bascom, Patrick perjured himself when he stated: (1) that Bascom owned and controlled the lockbox account; and (2) that Bascom did not loan any money to CSBI. In support of its perjury contention, Bascom for the first time presented to the court over 600 pages of documents it had failed to produce in discovery and had failed to present in the claim objection proceeding. These documents included a bank account statement from the lockbox account and excerpts from CSBI's electronic bookkeeping records.[4]

The exhibits also included documents supposedly showing who was liable for the cost of goods and services supplied by the renovation project vendors. According to Bascom, these documents demonstrated that CSBI was liable to the vendors. These documents mostly consisted of invoices and agreements between CSBI and the vendors. They also included a "typical" construction management agreement between CSBI and one of the Bascom affiliates.

In its response to Bascom's reconsideration motion, Patrick argued

---

[4] According to Bascom, it had electronic copies of CSBI's bookkeeping records on its computer server.

11

that, having failed to prove up their claim the first time, Bascom merely sought a "second bite of the apple." Patrick also pointed out that Bascom knew two months in advance of the claim objection hearing, when Patrick filed his claim objection, specifically what Patrick was asserting regarding Bascom's claimed loan: that Bascom did not loan any money to CSBI, that Bascom owned and controlled the lockbox account, and that the Bascom affiliates were responsible for the cost of the goods and services supplied for renovation of the Bascom affiliates' properties. And yet, as Patrick pointed out, Bascom did not explain its failure to address the so-called untruths in Patrick's declaration testimony before the court ruled on the claim objection.

Patrick further noted that the battle over Bascom's failure to produce or present the new exhibits in the claim objection proceeding largely missed the principal point of the bankruptcy court's ruling: that Bascom had failed to submit any evidence demonstrating that the parties had entered into a contract with specific essential terms.

Patrick also filed a motion in limine under Civil Rule 37(c)(1) seeking an order to exclude all of the exhibits included in Bascom's reconsideration motion. Patrick asserted that Bascom's failure to produce the exhibits in response to Patrick's earlier document production requests had harmed it and was not substantially justified. According to Patrick, the exclusion of the exhibits was mandatory under these circumstances pursuant to Civil

Rule 37(c)(1).

After holding a hearing on the motion in limine and the reconsideration motion, the bankruptcy court ruled in favor of Patrick on both motions. The court accepted the legal and factual grounds offered by Patrick in his opposition to the reconsideration motion and in his motion in limine. But the court also noted that Bascom's reconsideration motion had done nothing to address the failure to present evidence to establish that the parties had mutually assented to enter into a contract with the same essential terms.

On October 3, 2018, the bankruptcy court entered orders granting Patrick's motion in limine and denying Bascom's reconsideration motion. Bascom timely appealed these orders, as well as the order sustaining Patrick's claim objection.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.  Did the bankruptcy court commit reversible error when it disallowed Bascom's proof of claim?

2.  Did the bankruptcy court abuse its discretion when it denied Bascom's reconsideration motion?

3.  Did the bankruptcy court abuse its discretion when it granted

13

Patrick's motion in limine?

## STANDARD OF REVIEW

In appeals from orders on claim objections, we review the bankruptcy court's legal conclusions de novo and its factual findings under the clearly erroneous standard. *See Allen v. U.S. Bank, NA (In re Allen)*, 472 B.R. 559, 564 (9th Cir. BAP 2012). Findings of fact are not clearly erroneous unless they are illogical, implausible or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

We review for an abuse of discretion a bankruptcy court's ruling on a motion for reconsideration under § 502(j) and Rule 3008. *Heath v. Am. Express Travel Related Servs. Co. (In re Heath)*, 331 B.R. 424, 429 (9th Cir. BAP 2005). We also review for an abuse of discretion the bankruptcy court's evidentiary rulings. *Id.*

The bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes clearly erroneous factual findings. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

### A.   Merits Of Claim Objection Ruling - Contract Formation Issue.[5]

In its order disallowing Bascom's claim, the bankruptcy court specified that it was sustaining Patrick's claim objection "based on the legal and factual arguments set forth in the Objection and Reply pleadings." In turn, Patrick had presented several different grounds for disallowance of Bascom's claim. Among other things, Patrick asserted that CSBI did not receive any funds from Bascom and that any alleged loan was unenforceable under the statute of frauds and the statute of limitations.

Most importantly, however, Patrick argued that Bascom failed to submit any evidence that the parties had manifested their mutual assent to an agreement with definite enough terms to form an enforceable contract. The mutual consent of the contracting parties is an essential element for the formation of any contract. *Fair v. Bakhtiari*, 40 Cal. 4th 189, 202 (2006). The

---

[5] There is no need to discuss the procedural aspects of the claim objection proceeding from which these appeals originate. Nor do we need to discuss the shifting burdens of production that apply to claim objections. The law applicable to these issues is amply addressed in *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000); *see also Tyner v. Nicholson (In re Nicholson)*, 435 B.R. 622, 635–37 (9th Cir. BAP 2010), partially abrogated on other grounds by, *Law v. Siegel*, 134 S. Ct. 1188, 1196–98 (2014). We presume that Bascom has no concerns regarding these types of issues because Bascom's opening appeal brief did not argue that the bankruptcy court committed any errors with respect to them. Therefore, we decline to address them. *See Leigh v. Salazar*, 677 F.3d 892, 897 (9th Cir. 2012) (issues not specifically and distinctly argued in appellant's opening appeal brief are forfeited); *Dietz v. Ford (In re Dietz)*, 469 B.R. 11, 22 (9th Cir. BAP 2012), *aff'd and adopted*, 760 F.3d 1038 (9th Cir. 2014) (same).

existence of such mutual consent must be supported "by objective rather than subjective criteria." *Id.* In other words, there must be evidence of "outward manifestations" showing that parties agreed to the same essential terms. *Id.* Under the objective standard, those manifestations must be sufficient to cause a reasonable person to believe that the parties have agreed to the same thing in the same sense. *Id.*; *see also Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 215 (2006) ("[T]he failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract."); *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) ("If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation.").

Unless there is evidence of agreement as to all material terms, there is no contract. *Bustamante*, 141 Cal. App. 4th at 215 (citing *Banner Entm't, Inc. v. Superior Court (Alchemy Filmworks, Inc.)*, 62 Cal. App. 4th 348, 357–58 (1998)). The absence of agreement as to all material terms renders an alleged contract too indefinite to enforce. *Weddington Prods., Inc.*, 60 Cal. App. 4th at 811–12. *Accord, Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1178-79 (9th Cir. 2007). Here, Bascom's proof of claim, Kim's declaration, and the accompanying email exhibits did not provide any evidence of essential terms of the alleged loan transaction. As the bankruptcy court

more than once noted, Bascom failed to present any evidence regarding the interest rate, the maturity date, or any other terms of repayment. These all were essential terms for a loan. *See Kruse v. Bank of Am.*, 202 Cal. App. 3d 38, 60 (1988) ("There is a complete lacuna in the proof of essential terms of the claimed loan agreement: namely, the amount of the loan, the rate of interest, the terms of repayment, applicable loan fees and charges."); *see also Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1174 (2016) ("Typically, a contract involving a loan must include the identity of the lender and borrower, the amount of the loan, and the terms for repayment in order to be sufficiently definite.").

The absence of evidence of mutual assent served as the principal basis for the bankruptcy court's ruling on Patrick's claim objection. As evidence of CSBI's assent, Bascom points to Kim's declaration testimony that CSBI had requested a loan, the copies of the emails to Thompson, and Bascom's deposit of funds in the lockbox account. At the hearing on the claim objection, Bascom conceded that this was thin evidence to support its loan claim. But the bankruptcy court repeatedly observed that there was no evidence that the parties had agreed to all essential terms to create a loan. The emails on which Bascom so heavily relies do not provide for any interest, nor do they set forth any terms of repayment. During oral argument on the claim objection, Bascom's counsel suggested that Kim's declaration stated the applicable interest rate. It did not.

17

Bascom's opening appeal brief did not address at all the bankruptcy court's ruling on the contract formation issue. Instead, Bascom's appeal brief focused on the statute of frauds and whether there was sufficient evidence that CSBI received (or benefitted from) the alleged loan funds.[6] Given Bascom's failure to specifically and distinctly argue that the bankruptcy court erred when it sustained the claim objection based on the contract formation issue, *see Leigh*, 677 F.3d at 897, we will affirm the bankruptcy court's claim objection ruling.

## B.     Appeal From Denial Of Bascom's Reconsideration Motion.

Bascom also appeals from the denial of its motion pursuant to § 502(j) and Rule 3008 seeking reconsideration of the court's order disallowing its claim. If filed before the time to appeal expires, motions for reconsideration brought pursuant to Rule 3008 are considered under the same standards

[6] Bascom also argued on appeal that, if CSBI or Patrick disputed the validity of Bascom's claim, they should have raised this dispute in response to the 2009 involuntary petition filed by Bascom and three other alleged creditors of CSBI. As Bascom points out, a creditor holding a claim subject to bona fide dispute may not act as a petitioning creditor under § 303(b)(1). Therefore, Bascom reasons, CSBI (or Patrick) should have challenged Bascom's status as a petitioning creditor in response to the involuntary petition and should not have waited until 2018 to first raise its issues regarding Bascom's claim in a claim objection proceeding. This appears to be some sort of preclusion argument. Because Bascom did not raise this argument in the bankruptcy court, we decline to consider it for the first time on appeal. "Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so. A party's unexplained failure to raise an argument that was indisputably available below is perhaps the least exceptional circumstance warranting our exercise of this discretion."*G & G Prods. LLC v. Rusic*, 902 F.3d 940, 950 (9th Cir. 2018) (citations and internal quotation marks omitted).

applied to motions to alter or amend a judgment under Rule 9023. *See United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 209 (9th Cir. BAP 2006); *Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.)*, 178 B.R. 222, 227 (9th Cir. BAP 1995), *aff'd sub nom., Ashford v. Naimco, Inc. (In re Consol. Pioneer Mortg. Entities)*, 91 F.3d 151 (9th Cir. 1996).

Here, Bascom filed its reconsideration motion before the deadline expired to appeal the claim disallowance order. Thus, Rule 9023 applied. Rule 9023 makes Civil Rule 59 applicable in contested matters, including claim objection proceedings. *See In re Consol. Pioneer Mortg.*, 178 B.R. at 227 & n.5. A court may grant a Civil Rule 59 motion only if the court: "'(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.'" *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). *Accord, United States ex rel. Hoggett v. Univ. of Phoenix*, 863 F.3d 1105, 1108 (9th Cir. 2017).

In neither the bankruptcy court, nor on appeal, has Bascom presented any evidence or argument to establish any of the three alternative grounds for granting a motion under Civil Rule 59. On this record, the bankruptcy court would have abused its discretion if it had **granted** rather than denied Bascom's Rule 3008 motion.

Bascom instead argues that Patrick perjured himself. It contends that

Patrick knowingly made untrue statements under oath by claiming in his declarations: (1) that Bascom did not loan CSBI any money; (2) that Bascom retained ownership and control of the funds Bascom transferred to the lockbox account; and (3) that the Bascom affiliates, rather than CSBI, were liable for the cost of the goods and services provided by the vendors who did renovation work on the Bascom affiliates' properties. Having carefully reviewed Patrick's claims and the evidence Bascom provided in support of its reconsideration motion, we note as a threshold matter that it is far from clear whether Patrick committed perjury. Indeed, his claims strike us more as conclusory assertions regarding the legal effect of the parties' interactions rather than potentially false statements of fact.[7]

More importantly, Bascom's reconsideration motion and its perjury allegations wholly ignored the principal ground on which the court relied in support of its disallowance of Bascom's claim: the absence of evidence establishing that Bascom and CSBI entered into a contract that was specific and definite enough to enforce. As the court made clear at the claim objection hearing, it was not relying on Patrick's evidence to support its disallowance of Bascom's claim. Instead, it was relying on Bascom's failure to present any evidence to support the formation of the contract. Nothing

---

[7] According to the Supreme Court, a party or other witness who testifies under oath commits perjury, "if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).

in Bascom's reconsideration motion, nor in its appeal therefrom, explains how Bascom expected to prevail without addressing the bankruptcy court's controlling concern over contract formation. This omission in Bascom's reconsideration motion presentation was fatal in the bankruptcy court. It is fatal on appeal as well.

Even if we were to conclude that Patrick's claims amounted to perjury, it is well settled that perjury by itself does not constitute grounds for reversal of the court's order denying Bascom's reconsideration motion. Bascom relies on *In re Levander*, 180 F.3d 1114 (9th Cir. 1999), to support its contention that Patrick's alleged perjury justified reconsideration of the court's claims disallowance order. But Bascom's reliance on *Levander* is misplaced. In *Levander*, bankruptcy debtors had obtained judgment against a corporation for attorney fees related to a claims objection. The debtors later discovered that the corporation already had transferred its assets to a partnership prior to the entry of judgment despite the specific deposition testimony of a corporate officer that no assets had been transferred. *Id*. at 1117. The debtors then sought to amend the judgment to add the partnership as an additional debtor. The Ninth Circuit held that "a federal court may amend a judgment or order under its inherent power when the original judgment or order was obtained through fraud on the court." *Id*. at 1119.

Though courts have the inherent power to address fraud on the

21

court, *Levander* cautioned that "not all fraud is fraud on the court. To constitute fraud on the court, the alleged misconduct must "harm[ ] the integrity of the judicial process." *Id*. (citing *Alexander v. Robertson,* 882 F.2d 421, 424 (9th Cir.1989)). Considering whether perjury would qualify as a sufficient fraud upon the court to justify use of the court's inherent powers to remedy the fraud, the Ninth Circuit reasoned that perjury by itself typically is not treated as a fraud on the court because the opposing party usually has an opportunity to expose the perjurer's falsehoods during the court proceedings. *Id.* at 1119-20. Due to circumstances peculiar to that case, the *Levander* court concluded that the non-disclosure concerning the transfer of assets to the additional judgment debtor did constitute a fraud on the court because neither the judgment creditor, nor the court, could have known about or addressed the fraud before the original order awarding fees was entered. *Id.* at 1120.

Here, in contrast, Bascom knew specifically what Patrick was claiming. Furthermore, the record indicates that all of the exhibits Bascom presented in support of its reconsideration motion and its perjury allegations were within its possession and control well before the court ruled on the claim objection. In short, there could not have been any fraud on the court here because Bascom could have exposed Patrick's alleged falsehoods during the original claim objection proceeding. It just failed to do so.

At bottom, this case presents nothing more than a garden-variety Civil Rule 59 motion where the movant failed to establish that newly discovered evidence existed or that it lacked an opportunity to present the relevant evidence before the court ruled on the underlying claim objection. Under circumstances very similar to these, we have affirmed the bankruptcy court's denial of reconsideration. *See In re Consol. Pioneer Mortg.*, 178 B.R. at 225. Simply put, "a 'Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1112 (9th Cir. 2011) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

In sum, Bascom's appeal from the denial of its reconsideration motion lacks merit for a number of reasons. We therefore affirm the bankruptcy court's order denying Bascom's motion for reconsideration.

## C.     Appeal From Order Granting Patrick's Motion In Limine.

Bascom also appeals from the order granting Patrick's motion in limine. Pursuant to this order, the bankruptcy court excluded under Civil Rule 37(c)(1) all of the exhibits Bascom submitted in support of its reconsideration motion because Bascom failed to produce these documents in response to the document production request Patrick had served on

Bascom in the claim objection proceeding.[8]

At the hearing on the motion in limine, the court and Bascom's counsel, Thomas Polis, engaged in a long colloquy during which the court strove to understand why Bascom had been unable to produce the exhibits during discovery or present them into evidence during the claim objection proceeding. Polis struggled to articulate any sort of legitimate reason for its failure. In fact, he largely conceded that Bascom had been remiss in diligently fulfilling its duties to produce the evidence and present it to the court.

In the bankruptcy court and on appeal, Bascom primarily has argued that the court should have imposed less draconian sanctions in response to Bascom's failure to comply with discovery.

---

[8] Civil Rule 37(c)(1) provides:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

We need not address Bascom's argument on appeal. Evidentiary rulings will not be disturbed on appeal absent a showing of prejudice. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 933 (9th Cir. 2014) (citing *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 927–28 (9th Cir.2000)); *see also Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (applying a similar rule to appeals from discovery motions).

Bascom has not, and cannot, demonstrate any prejudice. As we have explained above, even if considered, Bascom's evidence does not support reversal of the order denying its reconsideration motion because the evidence was not newly discovered. Moreover, the new evidence was largely irrelevant to the bankruptcy court's principal basis for disallowing the proof of claim. Given that the evidence stricken would not have changed the outcome of the parties' litigation, Bascom was not prejudiced by the order granting Patrick's motion in limine. Accordingly, we affirm this order.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order sustaining Patrick's claim objection, its order denying Bascom's reconsideration motion, and its order granting Patrick's motion in limine.