NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 19 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CYNTHIA MORRIS,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC., a Delaware corporation; et al.,<br><br>Defendants-Appellees. | No.    18-55739<br><br>D.C. No.<br>2:17-cv-01725-PSG-AGR<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted December 11, 2019
San Francisco, California

Before:  SCHROEDER, FRIEDLAND, and R. NELSON, Circuit Judges.

Cynthia Morris appeals the district court's grant of summary judgment in favor of her former employer Time Warner Cable, Inc. ("TWC") on her claim under the California Fair Employment and Housing Act ("FEHA").  Morris contends that TWC violated the FEHA by terminating her in retaliation for her reporting that her supervisor had made a comment that she and her co-workers

*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

perceived as very racially offensive. We have jurisdiction under 28 U.S.C. § 1291.

Reviewing de novo the district court's grant of summary judgment, *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 954 (9th Cir. 2013), we affirm.

The FEHA's anti-retaliation provision makes it unlawful "[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part . . . ." Cal. Gov't Code § 12940(h). FEHA retaliation claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123, 1130 (Cal. 2005). Under this framework, the employee bears the initial burden of establishing a prima facie case of retaliation. *Id.* "Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." *Id.* If the employer does so, the burden shifts back to the employee to show that the employer's proffered reason is a pretext for intentional retaliation. *Id.*

Assuming without deciding that Morris established a prima facie case of retaliation, we conclude that her claim fails at the final step of the *McDonnell Douglas* analysis. TWC provided a facially legitimate justification for terminating Morris. An audit, initiated before she first reported her supervisor's comment, revealed that Morris had been entering multiple work orders on single transactions,

2

which artificially inflated her commissions in violation of company policy. Morris has not produced "'specific' and 'substantial'" evidence showing that this justification for termination is "unworthy of credence," such that a trier of fact could reasonably conclude TWC's proffered justification was a pretext for retaliation. *See Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-22 (9th Cir. 1998)).

Morris has produced some circumstantial evidence showing that TWC did not enforce its policy against fraudulent sales practices with perfect consistency. For example, two of Morris's co-workers stated that they on occasion submitted multiple work orders for individual transactions but were never reprimanded for doing so.

But any inference of pretext drawn from Morris's evidence is undercut by the fact that TWC began the audit that uncovered Morris's manipulation of her sales records weeks before her supervisor made the offending comment. That audit focused on Morris not because she had engaged in protected activity under the FEHA, but rather because her co-workers had reported suspicions about her sales figures to her immediate supervisor. Indeed, Morris admits that before the audit, she had already "received a final warning for dishonesty" from TWC for manipulating customer surveys, which may explain why TWC acted quickly in

terminating her once it concluded that she had violated company policy again. Further weakening any inference of retaliatory intent is evidence that TWC has fired at least ten other employees for manipulating sales records liked Morris did, none of whom engaged in protected activity, and that TWC did *not* fire two of Morris's co-workers who also reported the same comment made by their supervisor.

Because Morris did not meet her burden to prove that TWC's proffered reason for terminating her was "unworthy of credence" and was in fact pretext for retaliatory animus, *Winarto*, 274 F.3d at 1284, the district court correctly granted summary judgment against her.

**AFFIRMED.**