**In re Jack W. MANNIE, Jr. and Margaret S. Mannie, Debtors.**

**No. 00–42613 TK.**

United States Bankruptcy Court, N.D. California.

July 22, 2003.

him "virtually uninsurable." He would be unable to obtain a replacement policy.

Lorraine M. Walsh, Law Offices of Lorraine M. Walsh, Walnut Creek, CA, Patrick L. Forte, Law Offices of Patrick L. Forte, Oakland Park, CA, for debtor.

Eric A. Nyberg, Kornfield, Paul and Nyberg, Oakland, CA, Reidun Stromsheim, Law Offices of Stromsheim & Associates, San Francisco, CA, for trustee.

## MEMORANDUM OF DECISION RE MOTION FOR RECONSIDERATION

LESLIE J. TCHAIKOVSKY,
Bankruptcy Judge.

Scott Norton ("Norton"), Anthony Asher ("Asher") and the Law Firm of Sullivan, Ward, Bone, Tyler & Asher, P.C. ("Sullivan")(collectively the "Moving Parties") ask the Court to reconsider its order denying their motion to annul the automatic stay. For the reasons set forth below, the motion to reconsider will be denied.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

Antoinette Jorge ("Jorge") was employed by Diamond Mechanical, Inc. ("Diamond") for approximately 20 years. In early 1998, Jack W. Mannie, Jr. (the "Debtor"), Diamond's president, terminated Jorge. Jorge filed suit against Diamond and the Debtor for wrongful termination, and the Debtor hired Sullivan to represent them. Norton was the Sullivan attorney that handled the case. Asher had been the Debtor's initial contact at the Sullivan firm but, since he was not licensed to practice in California, was unable to represent him in the litigation.

From the onset of the case, Norton recognized that California law did not permit a wrongful termination claim to be asserted against someone other than the employer: i.e., Diamond. *See Phillips v. Gemini Moving Specialists,* 63 Cal.App.4th 563, 575–576, 74 Cal.Rptr.2d 29 (1998). However, Norton postponed moving to dismiss the Debtor from the action, purportedly intending to do so at the time of trial so as to avoid the expense of a separate motion. Trial was scheduled for June 10, 2000.

A few months prior to the scheduled trial date, the Debtor informed Norton that Diamond had ceased operations and that he was considering filing bankruptcy for both himself and Diamond. However, the Debtor did not file for bankruptcy at this time. The Debtor and Norton had no further communications until shortly before the trial date. In the mean time, Norton left the Sullivan firm, a fact that neither he nor Sullivan disclosed to the Debtor at that time.

According to the Debtor,[1] shortly before the scheduled trial, Norton's associate called the Debtor to confirm that Norton no longer represented him and Diamond in the wrongful termination action. The

---

1. These facts go to the heart of the malpractice action and may be disputed by the Moving Parties. By reciting the Debtor's factual allegations in this context, the Court is not purporting to determine that these allegations are true. The Court's decisions to deny the motion to annul and to reconsider this decision are based on the undisputed facts.

Debtor asserted his contrary understanding. He had a subsequent conversation with Norton which left him with the impression that Norton planned to seek a continuance of the trial date. Instead, without disclosing his intention to do so to the Debtor, Norton filed a motion to withdraw as counsel for the Debtor and Diamond. Norton served the motion on the Debtor by fax at an obsolete fax number. The Debtor never received the motion. The state court granted the motion to withdraw only on the condition that the proof of service be corrected. This was never done, and Norton and Sullivan continued as attorneys of record in the state court action.

No one appeared on the Debtor's behalf at the June 10, 1999 trial. Jorge did appear, presented evidence, and obtained a judgment in excess of $500,000 against both the Debtor and Diamond. The judgment against the Debtor included for $50,000 in punitive damages. Notice of the entry of the judgment was served on Sullivan which did not forward the document to the Debtor. The Debtor did not learn about the judgment until October 1999 when he received notice from the County Recorder's Office that Jorge had recorded an abstract of judgment.

In April 2000, the Debtor filed a chapter 7 bankruptcy petition. The Debtor scheduled both Jorge and Sullivan as creditors. However, he did not schedule as an asset a claim for malpractice or breach of fiduciary duty against Sullivan, Norton, or Asher. Jorge filed a timely nondischargeability action against the Debtor in the bankruptcy case and in February of 2001 was granted summary judgment as a matter of collateral estoppel based on the state court judgment. The bankruptcy case was closed in April 2001.

In the mean time, in June 2000, the Debtor filed a complaint in state court against the Moving Parties for legal malpractice and breach of fiduciary duty (the "Debtor's state court action"). He did not inform his bankruptcy trustee (the "Trustee") that he had filed this action. The Moving Parties knew of Debtor's bankruptcy case but took no steps to inform the Trustee that the Debtor was prosecuting these claims until nearly two years later. The Debtor claimed that the Trustee had authorized him to prosecute the claims. In any event, the Debtor contended, the claims were postpetition assets and thus not property of the estate.

In February 2002, the Moving Parties filed a motion for summary judgment on various grounds. The motion was heard on March 26, 2002. The Moving Parties based their motion in part on the Debtor's lack of standing to assert the claims due to his bankruptcy filing. Just prior to the hearing date, the Moving Parties informed the Trustee of the Debtor's state court action and the pending motion. The Trustee signed a declaration for the Moving Parties' benefit, stating that he had not authorized the Debtor to prosecute the action. However, the Trustee did not seek a stay of the Debtor's state court action nor did he seek leave to intervene in it. The state court granted the motion, based in part on the Debtor's lack of standing.[2] The Debtor filed a timely notice of appeal.

Either just after or just before the state court granted the motion for summary judgment, the Debtor filed a motion to reopen his bankruptcy case to disclose the legal malpractice claims. However, in the motion, he continued to contend that the claims were not property of the estate

---

**2.** The primary ground for the state court's decision was that the Debtor's assertion of his attorney-client privilege to avoid answering certain questions posed by the Moving Parties prevented the Moving Parties from effectively defending the action.

because they did not arise until after the chapter 7 petition was filed. On April 24, 2002, just prior to the running of the statute of limitations on the claims, the Trustee filed his own complaint asserting claims for legal malpractice and breach of fiduciary duty against the Moving Parties (the "Trustee's state court action").

On September 11, 2002, the Trustee filed a motion for approval of a settlement with the Moving Parties. The settlement proposed that the Moving Parties would pay the Trustee $35,000 and that the two state court actions, both the Debtor's and the Trustee's, would be dismissed with prejudice. Objections were filed to the proposed settlement by both the Debtor and Jorge, the principal creditor of the estate. The motion was noticed for hearing on February 6, 2003 and was continued to March 6, 2003 to permit additional briefing. The Moving Parties filed and noticed for hearing at the same time a motion to annul the automatic stay, purportedly to validate the Debtor's state court action.

At the conclusion of the hearing on March 6, 2003, the Court denied the motion to annul the stay. The Court continued the hearing on the motion to approve the settlement to April 17, 2003 to give the Trustee time to attempt to find litigation counsel willing to prosecute the claims against the Moving Parties on a contingent fee basis. On April 17, 2003, the Trustee informed the Court that he had found litigation counsel and wished to withdraw the motion to approve the proposed settlement. On May 5, 2003, the Court signed an order denying the motion to annul the stay. On May 15, 2003, the Moving Parties filed a timely motion to reconsider the Court's denial of their motion to annul.

### DISCUSSION

### A. APPLICABLE LAW

■ The claims for legal malpractice and breach of fiduciary duty are property of the Debtor's bankruptcy estate. 11 U.S.C. § 541. By filing and prosecuting his state court action, the Debtor violated the automatic stay by exercising control over property of the estate. 11 U.S.C. § 362(a)(3). Section 362(d)(1) of the Bankruptcy Code permits the Court to annul the automatic stay "for cause." 11 U.S.C. § 362(d)(1). The standards for granting an annulment of the stay were recently summarized as follows:

in deciding whether to grant relief from stay retroactively, many courts focus on two factors: "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." However, in addition to considering these two factors, a court must "balance [ ] the equities in order to determine whether retroactive annulment is justified." Such a determination necessarily involves a "case by case analysis."

*Palm v. Klapperman (In re Cady)*, 266 B.R. 172, 179 (9th Cir. BAP 2001), aff'd 315 F.3d 1121 (9th Cir.2003) (internal citations omitted).

*In re Stinson*, 295 B.R. 109, 116–17 (9th Cir. BAP 2003),

■ Normally, the party seeking annulment of the automatic stay is a creditor that, either intentionally or more often inadvertently, violated the stay. Thus, the first two factors cited above do not fit well into the present scenario. Thus, the Court must balance the equities based on the totality of circumstances, keeping in mind factors such as the parties' knowledge of the bankruptcy case, inequitable conduct, and prejudice to the interested parties.

■ A motion for reconsideration may be properly brought only to present

new facts or new law that were not reasonably available to the moving party at the time the motion was originally briefed and argued. Additionally, those new facts or law must be sufficient to cause the court to alter its prior decision. *See Garber v. Embry–Riddle Aeronautical Univ.*, 259 F.Supp.2d 979, 981 (D.Ariz.2003), citing *All Hawaii Tours Corp. v. Polynesian Cultural Center*, 116 F.R.D. 645, 648–649 (D.Haw.1987), aff'd in part, rev'd in part on other grds., 855 F.2d 860 (9th Cir.1988) and *In re Agricultural Research & Tech. Group, Inc.*, 916 F.2d 528, 542 (9th Cir. 1990). A motion to reconsider should not be used "to ask the court 'to rethink what the court had already thought through—rightly or wrongly'—or to reiterate arguments previously raised." *Id.*, citing from *In re Agricultural Research & Tech. Group, Inc.*, 916 F.2d at 542.

## B. MERITS OF MOTION

■ When the Court denied the motion to annul the stay at the March 6, 2003, it stated its reasons on the record as follows: First, the Court observed that annulling the stay would be futile because it would not give the Debtor standing to prosecute the claims against the Moving Parties. Those claims would still be property of the bankruptcy estate which only the Trustee has standing to prosecute. Second, the Court observed that, while the Moving Parties would be prejudiced by having to defend the Trustee's state court action after having already litigated the Debtor's state court action, their own inaction had contributed to this prejudice. The Moving Parties knew of the Debtor's bankruptcy case from the beginning of the Debtor's state court action and could have advised the Trustee sooner that the Debtor was prosecuting claims that were property of his bankruptcy estate. Had they done so, he might well have moved to intervene in that action.

Clearly, the Debtor behaved improperly in failing to schedule the claims as an asset in his bankruptcy schedules and in prosecuting them for his own benefit. However, it would be unfair to penalize the creditors of his estate for the Debtor's misconduct. The Court recognized the irony that Jorge, who by rights should never have been able to obtain a judgment against the Debtor, was the Debtor's largest unsecured creditor and thus would be the primary beneficiary of any recovery on these claims. However, the Court observed that the schedules listed $1.5 million in unsecured claims of which Jorge represented only approximately one-third.

In their motion for reconsideration, the Moving Parties contend that the Court's denial of their motion to annul is based on errors of both fact and law. The error of law, according to the Moving Parties, was that annulment of the stay would be futile. They contend that the annulment would validate the discovery taken in the Debtor's lawsuit. Absent an annulment, they contend, the Debtor would be free to change his testimony, and it might not be possible to use his prior inconsistent testimony under oath to impeach him. They cite no authority in support of this proposition. In any event, the Trustee has mooted this argument by stipulating that the prior discovery could be used in the Trustee's state court action.[3]

3. The Debtor has also agreed to dismiss the appeal in the Debtor's state court action and to waive his attorney-client privilege as to the other attorneys with whom he consulted. These concessions would not justify giving the Debtor a second chance to prosecute these claims on his own behalf. However, they do make the Trustee's state court action viable and support denial of the proposed settlement of those claims for only $35,000.

The Moving Parties contend that the Trustee's only options at this time are to intervene in the Debtor's state court action, to abandon it to the Debtor, or to consent to its prosecution by the Debtor on behalf of the estate. In support of this contention, they cite *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 535–536 (4th Cir.1997).[4] *Detrick* does contain such a statement. The *Detrick* court took this proposition from a leading bankruptcy treatise: 1 Robert E. Ginsburg & Robert D. Martin, Ginsburg & Martin on Bankruptcy § 12.06[G] (4th ed.1996). However, it took the statement out of context. The proposition was clearly intended to apply to actions pending when the bankruptcy is filed (and disclosed on the debtor's schedules), not those concealed by the debtor and prosecuted unwisely by the debtor without authorization from the trustee.

Moreover, the statement is mere dicta. In *Detrick*, the trustee was not seeking to exercise some option other than these three. The trustee was seeking to intervene in an action brought improperly by the debtor. The *Detrick* court overruled an objection to the trustee's motion and granted leave to intervene. *Id.*

As noted above, the Moving Parties also contend that the Court based its denial of the motion to annul on an error of fact: i.e., that the unsecured claims against the estate total $1.5 million. This was the amount of the scheduled claims. However, the claims filed totaled only approximately $700,000, of which Jorge's claim represented approximately five-sevenths, rather than one-third.

The fact remains that there are still approximately $200,000 worth of claims against the estate other than Jorge's judgment claim. These other creditors would also benefit from a recovery on a judgment against the Moving Parties. Moreover, even if the Trustee's state court action against the Moving Parties is successful, given the existence of these other creditors, the recovery will not be sufficient to pay all claims in full. Thus, the Debtor will still be left with a substantial nondischargeable debt to Jorge, to whom, under law, he should have owed nothing.

Granted, Jorge will receive a windfall if this occurs. However, since the Jorge judgment is a final, nondischargeable judgment, the enforceability of that judgment cannot be avoided. The only question at this time is who should bear the burden of paying it. If a court determines that Jorge's judgment was the result of the Moving Parties' malpractice or breach of fiduciary duty, it does not seem unfair to place most of that burden on the Moving Parties.

Finally, the Moving Parties contend that the Trustee is to blame for not stopping the Debtor from prosecuting the state court action in September 2000 or, at the latest, prior to the hearing on the motion for summary judgment. In support of this contention, the Moving Parties cite to two declarations which they contend demonstrate the Trustee's knowledge of the Debtor's state court action: (1) the Declaration of Jack Mannie Jr. in Support of Response to Defendants' Reply in Motion for Summary Judgment (filed in the Debtor's state court action) (the "Debtor's Declaration") and (2) the Declaration of Lawrence Fallon in Support of Motion for Annulment of the Automatic Stay (filed in this bankruptcy case) (the "Fallon Declaration").

■ The Debtor's Declaration states that, on September 6, 2000, the Debtor

---

4. They also cite *Little v. U.S.*, 41 Fed.Appx. 446, 448 (Fed.Cir.2002). *Little* is an unpublished decision and may not properly be cited. In any event, *Little* merely cites to *Detrick;* it contains no independent analysis.

sent the Trustee a copy of his fee agreement with his state court counsel with a question about whether he should deduct his legal fees from his tax return. The Debtor notes that the fee agreement describes the state court action. The Debtor states that, after sending the letter, he received no objection from the Trustee to his pursuing the litigation. Thus, in his view, he was authorized to prosecute it.

The Debtor attaches copies of the letter to the Trustee and the fee agreement to his declaration. The first paragraph of the letter indicates that it is being sent in response to the Trustee's request for federal and state tax returns. The letter promises to comply with this request within two weeks. The second paragraph refers "an Adversary Hearing pertaining to our case taking place on Thursday, September 21, 2000, for which we have had to retain the services of two separate attorneys." The Debtor then asks for tax advice in connection with his attorneys' fees.

The reference to the pending litigation is simply too ambiguous to have put the Trustee on notice that the Debtor was prosecuting a claim belonging to the estate. Moreover, the Trustee is not responsible for giving tax advice to the Debtor and presumably did not bother to review the fee agreements enclosed for the purpose of permitting him to give such advice. Even if he had, the agreement did not clearly identify the subject matter of the litigation as a prepetition claim.

The Fallon Declaration states that, on March 20, 2002, Fallon wrote to the Trustee: (1) advising him that the Debtor had initiated a malpractice action against his former counsel, that there was a hearing on a motion for summary judgment scheduled for March 26, 2002, and a trial scheduled for April 22, 2002, and (2) asking him whether he had authorized the Debtor to pursue the claim or had abandoned the claim to the debtor.

The Trustee did take action in response to this letter. He executed a declaration to be filed in the Debtor's state court action, stating that he had not authorized the Debtor to prosecute the claims. Presumably, the state court relied on this declaration in ruling in the Moving Parties' favor that the Debtor lacked standing to assert the claims. The Trustee had no obligation to do more. He was certainly not obligated to intervene into a lawsuit that the Debtor's conduct had already seriously compromised.

### CONCLUSION

The Court concludes that the motion for reconsideration should be denied. No error of law has been established. Although the Court did make an error of fact in finding that the unsecured claims against the estate totaled $1.5 million, when the claims filed totaled only $700,000. However, the Court's decision to annul the stay is not altered by this correction of fact. Counsel for the Trustee is directed to submit a proposed form of order in accordance with this decision.