FILED

OCT 28 2022

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:
MARILYN THERESA PAVENTY,

        Debtor.

---

MARILYN THERESA PAVENTY,

        Appellant,

v.

USDA RURAL HOUSING SERVICE,

        Appellee.

BAP No. EC-21-1159-SLB

Bk. No. 2:14-bk-29018

**MEMORANDUM**∗

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Christopher M. Klein, Bankruptcy Judge, Presiding

Before: SPRAKER, LAFFERTY, and BRAND, Bankruptcy Judges.

Memorandum by Judge Brand

Dissent by Judge Spraker

## INTRODUCTION

Appellant Marilyn Theresa Paventy appeals an order denying her motion for reconsideration of the bankruptcy court's prior order denying her motion to hold creditor USDA Rural Housing Service ("USDA") in contempt

---

∗ This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

for violation of the discharge injunction and her completed chapter 13[1] plan. Paventy has not provided us with a transcript from the hearing where the bankruptcy court made its ruling denying the underlying contempt motion, and she has not argued on appeal how the bankruptcy court erred in denying reconsideration of the contempt order. Instead, Paventy argues about issues she believes the court resolved with respect to the validity of her plan and the extent of her discharge regarding USDA's debt. Nevertheless, we conclude that Paventy failed to present any grounds for reconsideration, and we AFFIRM.

## FACTS

### A.    The USDA loan

In 1991, Paventy obtained a loan for $56,726.56 from USDA to purchase her residence. The terms of the loan were set forth in a promissory note providing for 8.75% annual interest and monthly payments for 33 years – i.e., until 2024. The note was secured by a deed of trust against the residence in favor of USDA. The loan also included a subsidy repayment agreement ("Subsidy"), whereby $22,659.00 of the original principal amount would not bear interest and would not be subject to repayment until Paventy sold or ceased to occupy the residence.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

**B.      The chapter 13 bankruptcy and plan**

Paventy filed a chapter 13 bankruptcy case in 2014. She valued the residence at $65,000.00 and listed USDA's secured claim as $32,947.00, representing the outstanding loan balance exclusive of the Subsidy.

Along with the petition, Paventy filed her chapter 13 plan using the form plan adopted by the district. She proposed to make 60 monthly plan payments of $1,030.00. Paventy listed USDA's claim in Class 2, which is reserved for secured claims that are modified by the plan, or that have matured or will mature before the plan is completed. Paventy proposed to pay USDA's entire claim in full over 60 months, even though the maturity date for the loan was 10 years away. The plan broke USDA's claim into two parts: $27,611.58, and $5,335.42 in arrears. As to the larger component, Paventy proposed a monthly payment of $517.91 with annual interest at 4.75%. For the arrears, Paventy proposed a monthly payment of $88.92 with no interest. These payments did not include her obligation to pay taxes or insurance for the residence, which USDA ultimately paid.

Section 2.04 of Paventy's plan, regarding proofs of claim, provided: "The proof of claim, not this plan or the schedules, shall determine the amount and classification of a claim unless the court's disposition of a claim objection, valuation motion, or lien avoidance motion affects the amount or classification of the claim." Section 2.09(c)(2) of Paventy's plan, regarding Class 2 secured claims, provided: "Debtor is prohibited from modifying the rights of a holder of a claim secured only by a security interest in real

3

property that is Debtor's principal residence."

USDA filed a secured proof of claim for $55,541.36, which included $30,911.07 in principal, with $4,744.58 of that in arrears, $2,089.71 in prepetition interest, and $22,659.00 for the Subsidy. The proof of claim stated that the secured debt accrued interest at an annual rate of 8.75%. The attached loan documents established that the debt was secured by the residence and fully matured in 2024 – several years after plan completion.

USDA did not object to Paventy's plan or otherwise participate in the confirmation process. The bankruptcy court entered an order confirming Paventy's plan on December 29, 2014.

Post-confirmation, Paventy objected to USDA's claim. The objection sought to reduce the secured claim by the Subsidy amount because it was not presently due. Paventy acknowledged that USDA's claim was secured by her residence, and she did not dispute that its claim was accruing interest at the contract rate of 8.75%. USDA did not oppose the claim objection. The bankruptcy court entered an order sustaining the objection and disallowing USDA's claim to the extent of the Subsidy amount.

In 2018, the bankruptcy court granted Paventy's motion to modify her plan to address a plan default. Paventy's modified plan differed from her original plan in only one material respect and did not affect USDA's plan treatment. The modified plan disclosed a nonstandard provision to increase her monthly plan payments to cure the plan default over the course of the remaining term of her 60-month plan.

4

Section 3.2 of Paventy's modified plan (Section 2.04 in the original plan)[2] provided the same language that the proof of claim, not the plan or schedules, would determine the amount and classification of a claim unless otherwise ordered by the court. Section 3.8(c)(3) of Paventy's modified plan (Section 2.09(c)(2) in the original plan), regarding Class 2 secured claims, was slightly altered to read: "Except as permitted by 11 U.S.C. § 1322(c), Debtor is prohibited from modifying the rights of a holder of a claim secured only by Debtor's principal residence."

After completing her plan payments, Paventy received a discharge on April 20, 2020.

## C. USDA's post-discharge collection efforts and Paventy's motion for contempt

Shortly after entry of the discharge order, USDA began contacting Paventy about an unpaid balance owed on the loan. USDA maintained that $11,724.41 remained unpaid, which consisted of monthly payments totaling $11,257.97, fees of $279.44, and $187.00 in late charges. Paventy and her counsel exchanged correspondence with USDA, contending that the Subsidy portion of USDA's claim was disallowed in the bankruptcy and that the remaining principal balance had been paid in full per the plan. Thus, it was Paventy's position that the principal amount due on USDA's loan was $0.

Paventy then filed a motion requesting that the bankruptcy court find

---

[2] The district had amended and renumbered its form chapter 13 plan between the time Paventy filed her original and modified plans. Although the numbering had changed, the substance of both form plans remained nearly identical for our purposes here.

5

USDA in contempt for violating the confirmed plans and the discharge injunction. Paventy argued that USDA was attempting to collect the disallowed Subsidy of $22,659, as well as the principal and interest provided for and paid through the plan.

USDA denied that it was attempting to collect the Subsidy, which Paventy later agreed was correct, but did admit it was attempting to collect the balance of its debt that it argued survived the discharge. USDA noted that Paventy had made payments using a 4.75% interest rate when the contract interest rate was 8.75%, which accounted for much of the shortfall. Relying on its interpretation of Section 2.04 of the original plan and Section 3.2 of the modified plan, USDA insisted that its proof of claim controlled the applicable interest rate and that neither Paventy's claim objection nor the resulting order altered the contractual interest rate. USDA further relied on Section 2.09 of the plan and Section 3.8(c)(3) of the modified plan and § 1322(b)(2) to argue that Paventy was prohibited from modifying its claim, which did not fully mature until 2024 and was wholly secured by her residence. Alternatively, USDA argued that it could not be found in contempt; the conflicting plan provisions and the lack of an adversary proceeding by Paventy gave USDA an objectively reasonable basis for believing that its lien survived the discharge and that its post-discharge conduct was consistent with enforcement of its lien rights.

In reply, Paventy contended the plans' deviation from the contractual interest rate did not affect the "amount" or the "classification" of USDA's

6

claim and hence did not implicate Section 2.04 of the original plan or Section 3.2 of the modified plan. In other words, while the proof of claim controlled the amount of the debt, it did not control the interest rate – the plan did. Paventy argued that her plans distinguished and dealt separately with the "amount" of debt she owed to USDA and the "interest rate" applicable to that debt. She maintained that when a chapter 13 debtor states in the plan that the debtor is paying the balance of the secured loan during the plan, the interest rate is "routinely" modified – without motion, adversary proceeding, or additional notice. Paventy argued that there were no conflicting provisions in the plans as USDA contended; it was clear she intended to pay the principal balance of the loan at an interest rate of 4.75%. Paventy argued that USDA was properly served with the plans and did not oppose or object to either.

The bankruptcy court denied the contempt motion, stating its findings of fact and conclusions of law on the record. Paventy did not appeal the later written order, which simply referenced the court's findings and conclusions at the hearing. Instead, Paventy filed a timely motion for reconsideration.

**D.    Paventy's motion for reconsideration of the contempt order**

Paventy argued that reconsideration of the contempt order was warranted for three reasons: (1) the court made a factual error when it stated that she had not objected to USDA's claim; (2) the court incorrectly ruled that the interest rate stated in USDA's proof of claim controlled the plan and was incorporated into the "amount" stated on the proof of claim; and (3) the court had ruled without reviewing USDA's supplemental accounting of her loan

7

payments, which was not available until after the contempt hearing. As to her second argument, Paventy contested the conclusion that USDA's proof of claim overrode the plan treatment to pay the outstanding balance at reduced interest. Specifically, Paventy argued that the term "amount," as used in Section 2.04 of the original plan or Section 3.2 of the modified plan, could not be interpreted to presumptively include the interest rate, meaning that the cram-down interest rate stated in the plans controlled, which she argued was authorized under *Till v. SCS Credit Corp.,* 541 U.S. 465 (2004).

In response, USDA argued that Paventy failed to present any grounds for reconsideration; rather, she was rehashing earlier arguments or was inappropriately raising new ones. In any case, USDA argued that the court did not err in finding that USDA's proof of claim controlled its treatment under the plans in denying the contempt motion, and again argued that the Code and plans both prohibited modification of its loan and lien rights because the claim was wholly secured by Paventy's residence.

In reply, Paventy denied that her plans violated the Code. However, to the extent USDA had a viable objection to its treatment under the plans, argued Paventy, it waited too long to raise it. In support of her argument, she cited to § 1327 and *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260 (2010).

The bankruptcy court held a hearing on the reconsideration motion. Counsel for Paventy stated that the reason for filing the motion rather than appealing the contempt order was so that the court could have another

opportunity to review the facts and to consider new evidence, namely, USDA's supplemental accounting for the loan payments that was not available at the prior hearing. Counsel for USDA referenced a tentative ruling in which the court presumably set forth its ruling on reconsideration, but we do not have a copy of it in the record.

After spending considerable time discussing the Subsidy, which was no longer at issue for USDA's alleged contempt, counsel for the parties discussed the language in the plans and argued over whether the plan or the proof of claim controlled the interest rate paid on USDA's claim – an issue that had already been raised and decided by the bankruptcy court in denying Paventy's contempt motion. Upon reviewing and discussing the conflicting provisions in the plans, the bankruptcy court orally denied the motion to reconsider. Paventy appeals the subsequent written order.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion in denying Paventy's reconsideration motion?

## STANDARD OF REVIEW

We review for abuse of discretion a bankruptcy court's denial of a motion for reconsideration. *Carruth v. Eutsler (In re Eutsler)*, 585 B.R. 231, 235 (9th Cir. BAP 2017). The bankruptcy court abuses its discretion if it applies

9

the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in the record. *United States v. Hinkson,* 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

## DISCUSSION

### A. Governing law on reconsideration

A motion for reconsideration may be brought under Civil Rules 59(e) or 60(b), applicable in bankruptcy under Rules 9023 and 9024. While Paventy cited to a nonexistent "Rule 9024(b)(1)(2), and (6)" in her reconsideration motion, her arguments indicate that she was requesting relief under Civil Rule 59(e) and Rule 9023. USDA argued that her motion should be treated as a motion to alter or amend judgment under Civil Rule 59(e). The bankruptcy court did not cite under which rule it was proceeding.

We construe a motion for reconsideration as a motion to alter or amend judgment under Civil Rule 59(e) and Rule 9023 when a party files the motion within 14 days following the date of the entry of the judgment or order. *Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist. No. 69,* 374 F.3d 857, 863 (9th Cir. 2004) (applying former 10-day rule). Absent highly unusual circumstances, a motion for reconsideration should not be granted unless the court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law. *389 Orange St. Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir. 1999); *see Kona Enters., Inc. v. Est. of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000) (reconsideration is an "extraordinary

remedy, to be used sparingly in the interests of finality and conservation of judicial resources.") (quotation marks and citation omitted).

A party may not use a Civil Rule 59(e) motion as a vehicle to present a new legal theory for the first time, to raise legal arguments which could have been raised in connection with the original motion, or to rehash the same arguments presented the first time or simply to express the opinion that the court was wrong. *Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.),* 344 B.R. 94, 103 (9th Cir. BAP 2006), *aff'd and remanded*, 277 F. App'x 718 (9th Cir. 2008). "The standard for granting a motion to reconsider is strict in order to preclude repetitive arguments that have already been fully considered by the court." *Id.*; *see In re Mannie,* 299 B.R. 603, 608 (Bankr. N.D. Cal. 2003) ("A motion to reconsider should not be used to ask the court to rethink what the court had already thought through – rightly or wrongly – or to reiterate arguments previously raised.") (cleaned up).

**B.     The bankruptcy court did not abuse its discretion in denying Paventy's reconsideration motion.**

In an appeal of an order denying a reconsideration motion under Civil Rule 59(e) and Rule 9023, we have jurisdiction to review both the order denying reconsideration and the underlying order. *In re JSJF Corp.,* 344 B.R. at 99. However, our review of the order denying the contempt motion is hampered because Paventy failed to provide us with a transcript of the hearing where the bankruptcy court set forth its findings of fact and conclusions of law. Where the court's findings of fact and conclusions of law

11

were stated on the record at a hearing, the appellant is required to provide a transcript of the hearing as part of the record on appeal. *McCarthy v. Prince (In re McCarthy),* 230 B.R. 414, 417 (9th Cir. BAP 1999). Determining whether the bankruptcy court here abused its discretion in denying reconsideration is problematic when we do not know the basis for its denial of the contempt motion.

To be fair, the bankruptcy court made a number of statements at the reconsideration hearing during its colloquy with counsel, including that Paventy was free to appeal its ruling and that "the facts that we have talked about today, I'm willing to say here and now are findings of fact, you know, to identify the record." Hr'g Tr. (June 8, 2021) at 35:5-7. The dissent believes that the bankruptcy court's statements at the reconsideration hearing were effectively a revisit of its prior contempt ruling, and thus we should be reviewing the merits of its underlying decision to not hold USDA in contempt. But a fair reading of the transcript reveals that the bankruptcy court did not articulate any real findings of fact or conclusions of law that we can meaningfully review.

On appeal, Paventy fails to assert any specific argument for why the bankruptcy court erred in denying reconsideration. She does not cite to Civil Rule 59(e) or Rule 9023 or even discuss the proper standard of review. In fact, the word "reconsider" or "reconsideration" is found nowhere in her opening brief. As such, any arguments with respect to reconsideration have been waived. *In re JSJF Corp.,* 344 B.R. at 103 (failing to brief issues regarding

12

reconsideration of claims results in waiver and affirmance).

Notwithstanding Paventy's failures, however, we conclude that she did not present any grounds for reconsideration. Again, relying only on what Paventy said the bankruptcy court did at the contempt hearing, which we are unable to corroborate, the arguments she raised in her reconsideration motion were either irrelevant to the ultimate issue of contempt or were simply an improper rehash of previous arguments.

In her reconsideration motion, Paventy argued first that the court erred in stating that she had not objected to USDA's proof of claim when she had. This fact is irrelevant. Her claim objection focused solely on the Subsidy, which everyone agrees USDA was not trying to collect and was not the basis for the alleged contempt. Her second argument, that the court erred in finding that USDA's proof of claim and not the plan controlled the interest rate, was a rehash of an argument she raised specifically in her contempt motion. The bankruptcy court considered that argument before and rejected it. If she disagreed with that ruling, she should have properly appealed the contempt order, not filed a motion for reconsideration to ask the bankruptcy court to rethink what it had already thought through. *In re Mannie*, 299 B.R. at 608. Finally, as for the new, supplemental accounting that was not available until after the contempt hearing, Paventy argued that USDA's accounting was incorrect. However, she did not articulate how this was material to whether USDA committed contempt, or that if the court considered the supplemental accounting it would change the contempt analysis and result.

We believe that the dissent's decision to go beyond the scope of reconsideration and address the underlying merits of the contempt issue is not warranted in this case. And its decision to interpret the meaning of the plans and confirmation orders and the effect of the discharge order as to USDA's debt answers a different question not before us, even if review of the alleged contempt were proper.[3] In fact, Paventy's counsel stated at oral argument that he was not seeking the Panel's review of any issues regarding the plans or discharge order. Those issues should be presented to the bankruptcy court in the first instance and properly briefed by the parties.

## CONCLUSION

As to the order denying reconsideration of the contempt order, we AFFIRM.

Dissent begins on next page.

---

[3] The dissent's reliance on *Espinosa*, 559 U.S. 260 is misplaced. *Espinosa* involved a creditor's attempt under Civil Rule 60(b) to obtain relief from a confirmation order. This is an appeal of an order denying a motion for civil contempt for violation of a discharge injunction which turned on the clarity of the confirmation order. The issue here is whether the confirmation orders were clear and unambiguous such that there is an objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order.

14

SPRAKER, Bankruptcy Judge, dissenting.

I believe the bankruptcy court committed clear error by not enforcing the entry of discharge resulting from Marilyn Paventy's performance of her confirmed chapter 13 plan. Paventy's plan provided for the full payment of USDA's outstanding loan balance over five years. USDA failed to object to confirmation of her plan or entry of her discharge. After entry of the discharge USDA sought to collect what it calculates to be the unpaid balance of that debt. It argues that Paventy failed to pay the full outstanding loan balance because she improperly reduced the contract rate of interest.

Paventy moved to hold USDA in contempt for violating her confirmed plan and the discharge. The bankruptcy court denied the motion. On reconsideration, it held that the interest rates stated in the confirmed plan did not reduce the contract rate because the reduction conflicted with standard language in the form chapter 13 plan. But the instructions within a form plan cannot have more effect than the statutes they serve. For this reason, I conclude that the bankruptcy court's decision is clearly erroneous and at odds with the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010). Paventy performed her obligations under the confirmed plan on the terms she proposed. For more than five years, USDA never objected or raised the issue of the applicable interest rate. Its postpetition efforts to collect additional amounts violated the confirmed plan.

Moreover, Paventy sought to pay the outstanding loan balance in full through her plan, not to cure and maintain the long-term debt. As a result,

that debt has been discharged under § 1328(a) as paid in full. Again, USDA had the opportunity to object to entry of the discharge and failed to do so. A debtor's discharge has consequences, as does a creditor's inaction. USDA's post-discharge actions violated Paventy's discharge as a matter of law. Therefore, the reasoning the bankruptcy court expressed at the reconsideration hearing for denying Paventy's motion for contempt was clear legal error.

These errors of law incorrectly led the bankruptcy court to deny Paventy's reconsideration motion. Accordingly, I dissent.

## A.    The scope of reconsideration and the procedural posture on appeal.

I agree with the majority that the posture of this appeal is not ideal. Paventy appealed denial of her motion for reconsideration. Unfortunately, the record does not include the court's reasoning for originally denying her motion for contempt.[4] The majority concludes that Paventy has failed to demonstrate that the court abused its discretion when denying

---

[4] Citing *McCarthy v. Prince (In re McCarthy)*, 230 B.R. 414, 417 (9th Cir. BAP 1999), the majority takes the position that because Paventy failed to provide the transcript from the contempt hearing, which presumably set forth the bankruptcy court's factual and legal basis for denying the contempt motion, we either cannot or should not review the reconsideration motion. I disagree. Paventy did not appeal the denial of her contempt motion. She only appealed the denial of her reconsideration motion. Moreover, the absence of an adequate record on appeal typically warrants dismissal or summary affirmance only to the extent the record deficiencies preclude meaningful review. *See Kyle v. Dye (In re Kyle)*, 317 B.R. 390, 393 (9th Cir. BAP 2004), *aff'd*, 170 F. App'x 457 (9th Cir. 2006). The record provided, including the reconsideration hearing transcript, is sufficient to permit meaningful review of the controlling issues raised by this appeal: the consequences of Paventy's plan and *Espinosa*. Both of these issues present questions of law that an appellate court typically reviews independent of the trial court's decision.

reconsideration. Paventy has consistently maintained that she discharged the outstanding loan balance through her plan by paying it in full. She argues that she did so because she paid the total amount of USDA's allowed secured claim at reduced interest rates. USDA argues that she did not fully pay the outstanding loan balance because the higher contract rate applied. On reconsideration, the bankruptcy court rejected application of *Espinosa* and Paventy's effort to apply the reduced interest rates. That issue is squarely before us on appeal.

Civil Rule 59(e), made applicable in bankruptcy cases by Rule 9023, applies in this instance because Paventy filed her reconsideration motion within 14 days of entry of the order on her contempt motion. *First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.)*, 439 F.3d 558, 561-62 (9th Cir. 2006). Reconsideration under Rule 59(e) is appropriate when the court: "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). The ultimate question presented when reviewing the denial of a motion brought under Rule 59(e) is whether the court abused its discretion in denying relief. *In re Onecast Media, Inc.*, 439 F.3d at 561.

In this instance Paventy did not present newly discovered evidence or argue an intervening change in the controlling law. Rather, she argued that the court committed clear error. "A court abuses its discretion in denying a

17

motion to reconsider if the underlying decision "involved a clear error of law." *Id.* (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (en banc)); *see also Jaynes Corp. v. Zurich Am. Ins.*, No. 05-16671, 2007 WL 2141611, at *1 (9th Cir. July 26, 2007) (holding that district court did not abuse its discretion in granting reconsideration after it identified "a clearly erroneous error of law" in its prior misinterpretation of insurance policy provision). For purposes of Civil Rule 59(e), clear error analysis implicates the same review standard as a clearly erroneous factual finding. *See Smith,* 727 F.3d at 955 (citing *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)).

The bankruptcy court clearly erred in denying reconsideration if its interpretation of Paventy's confirmation and discharge orders was illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). The genesis for my dissent is based on the court's refusal to apply *Espinosa* to Paventy's confirmed plan. This matter was clearly raised during the reconsideration proceedings, both in the briefing and at oral argument. During the hearing on the motion to reconsider, the court pointedly asked Paventy's counsel for the authority to reduce the contract interest rate on a debt secured primarily by the debtor's residence. Counsel cited *Espinosa*. The bankruptcy court rejected Paventy's arguments as a basis for reconsideration, though it acknowledged that "this is fair game for appeal and that it's a complicated situation."

The court focused on, and rejected, Paventy's argument that USDA was bound to the lower interest rates by confirmation of the plan under *Espinosa*.

18

But the underlying motion subject to reconsideration was for contempt, not determination of the applicable interest rate. Paventy's contempt motion alleged that USDA was in contempt for violations of both the confirmation order and her discharge. Throughout the briefing and argument, the parties acknowledged that Paventy had accelerated the outstanding loan balance and sought to pay it through her plan. Paventy's counsel argued that under her plan there was nothing owed to USDA except the contingent Subsidy.[5] Counsel agreed with the court's observation at the hearing on reconsideration that her plan accelerated the outstanding balance. During that hearing the court directly asked Paventy's counsel, "what is the alleged contempt?" He replied: "[t]he contempt is that USDA is still—still alleges that the debtor owes principal. Not on the subsidy, but on the original underlying loan. And is sending notices—was sending notices to the debtor stating that she was

---

[5] As explained by the majority, Paventy borrowed $56,726.56 under a loan program with USDA. Of this amount $22,659.00 was part of a subsidy repayment agreement that is payable only when she sells or moves from the residence. USDA filed its proof of claim in the total amount of $55,541.36, but the parties agree that at the time Paventy filed her bankruptcy she only owed $32,882.36 ($55,541.36 - $22,659.00 (the subsidy) = $32,882.36). Paventy objected to USDA's claim on the basis that she did not currently owe the Subsidy as she continued to live in the residence. USDA did not oppose the claim objection, and the court sustained the objection. As a result, the Subsidy was not part of USDA's secured claim in the bankruptcy. While there is no dispute that the Subsidy continues to exist, it is essentially a nonrecourse obligation due upon the sale of the residence. Admittedly, the Subsidy remains part of the loan and is unpaid. But the parties agree it was not part of the bankruptcy as a result of the claim objection. For this reason, I refer to USDA's claim in the bankruptcy as the outstanding loan balance as it represents the total amounts due during Paventy's bankruptcy. Even though payment of that outstanding loan balance could not satisfy the loan in full (because of the Subsidy), she sought to pay the full amount of USDA's secured claim.

delinquent, that there was still a remaining balance due on the principal amount."

In its opposition to Paventy's motion for reconsideration, USDA admitted that it understood that she had proposed to accelerate the loan balance, stating: "Section 2.09 of the plan proposed to pay USDA the full amount of its secured claim with interest on the nondelinquent balance at 4.75% and curing arrearages of $5,335.42 without interest." At oral argument, USDA explained that it was still seeking principal of $11,253.35 and directed the court to an exhibit breaking down the interest, fees, and late charges it believed remained outstanding.[6] Significantly, USDA never denied that her plan accelerated the loan. After Paventy's counsel stated that she had paid the outstanding loan balance in full, the court asked USDA's counsel to explain why any amounts were still due. Counsel for USDA responded:

> The why is because the terms of the plan did not modify the mortgage on the debtor's residence. It continued to accrue interest at the contract rate which is 8.75 percent which was not the amount that was paid through the plan. And because the plan did not modify the mortgage, there was an amount left at the end to be paid, and that's what the debtor got statements for.

The bankruptcy court denied Paventy's motion for contempt. On reconsideration, Paventy again argued that USDA's outstanding loan balance had been paid in full at reduced interest pursuant to the

---

[6] USDA's exhibit demonstrates that Paventy strictly made her plan payments but did not address any postpetition escrow amounts for taxes and insurance. USDA never objected or raised these unpaid amounts either and does not address them on appeal.

confirmed plan. In denying reconsideration the bankruptcy court reasoned that it did not clearly err in its prior denial of the contempt motion because the interest rates set forth in Paventy's plan did not apply. For the reasons that follow, this was clear error.

## B. The applicable rate of interest and *Espinosa*.

Paventy's plan provided for a reduced interest rate below the contract interest rate of 8.75%.[7] USDA failed to object to her original or amended plans. The bankruptcy court agreed with USDA that Paventy had impermissibly modified its secured debt because the loan was secured by Paventy's residence, and any modification was precluded under § 1322(b)(2). The form chapter 13 plan required in the district contained standard provisions similarly precluding modification of USDA's loan under § 1322(b)(2). Yet, USDA did not object, and the bankruptcy court confirmed the plans with these lower interest rates.

The bankruptcy court held that the standard chapter 13 plan provisions precluded Paventy from modifying the interest rates in violation of § 1322(b)(2) because the debt did not mature until after conclusion of her plan and was secured by her residence. Paventy believed she could modify the contract rate because she proposed to pay the outstanding balance through her plan. Her argument is contrary to the Bankruptcy Code. It is well accepted that reducing interest rates on long-term loans secured by the

---

[7] Though Paventy sought to accelerate the outstanding loan balance and pay it through her plan, she provided that the unpaid balance would be paid at 4.5% annual interest while the prepetition arrears would not accrue any interest.

debtor's residence violates the anti-modification provision of § 1322(b)(2). *See Greenpoint Mortg. Funding, Inc. v. Herrera (In re Herrera)*, 422 B.R. 698, 718-19 (9th Cir. BAP 2010) (listing cases), *aff'd & adopted sub nom. Home Funds Direct v. Monroy (In re Monroy)*, 650 F.3d 1300 (9th Cir. 2011). Section 1322(c)(2), however, does permit debtors to modify the rights of a creditor secured by a principal residence if the total debt was originally scheduled to come due during the term of the chapter 13 plan. But USDA's secured debt was originally scheduled to mature well after her plan term. Modification of USDA's loan rights was, therefore, impermissible under § 1322(c)(2) and violated § 1322(b)(2) as well as the district's form plan.

Having established that Paventy's interest rate reduction impermissibly violated § 1322(b)(2), and that the standard plan provisions mirrored the statute, what was the consequence of Paventy's impermissible plan provisions? Neither the court's hearing remarks nor its order denying the motion for reconsideration specifically addresses this question. But USDA contends that because Paventy understated the interest rate, she did not actually pay the full outstanding loan balance through her plan and the balance remains due. It argues that it can collect this amount postdischarge.

On reconsideration, the court agreed with USDA that the reduced interest rates in Paventy's plan were ineffective as a matter of law. The court rejected application of the Supreme Court's decision in *Espinosa* to Paventy's confirmed plan. In *Espinosa*, a chapter 13 debtor's plan provided for the discharge of his student loan upon the completion of his plan. This provision

22

violated § 523(a)(8). But the creditor failed to object to the debtor's plan or otherwise challenge entry of his discharge. After the debtor completed his plan and received his discharge, the creditor sought to set aside confirmation of the performed plan under Civil Rule 60(b)(4). The Supreme Court held that even though confirmation of the plan in violation of § 523(a)(8) was clear legal error, "the order remains enforceable and binding on United because United had notice of the error and failed to object or timely appeal." 559 U.S. at 275. In reaching its decision, the Supreme Court rejected the creditor's arguments that the statute imposed "a self-executing limitation on the effect of a discharge order that renders the order legally unenforceable, and thus void, if it is not satisfied." *Id*. at 273 (internal quotation marks omitted).

Relevant to the instant case, the Supreme Court wrote:

Rule 60(b)(4) does not provide a license for litigants to sleep on their rights. United had actual notice of the filing of Espinosa's plan, its contents, and the Bankruptcy Court's subsequent confirmation of the plan. In addition, United filed a proof of claim regarding Espinosa's student loan debt, thereby submitting itself to the Bankruptcy Court's jurisdiction with respect to that claim. United therefore forfeited its arguments regarding the validity of service or the adequacy of the Bankruptcy Court's procedures by failing to raise a timely objection in that court.

Rule 60(b)(4) strikes a balance between the need for finality of judgments and the importance of ensuring that litigants have a full and fair opportunity to litigate a dispute. Where, as here, a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and

23

the party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief.

*Id.* at 275-76 (citations omitted); *see also HSBC Bank USA v. Blendheim (In re Blendheim)*, 803 F.3d 477, 498 (9th Cir. 2015) ("Once HSBC received notice of [the objection to its claim], it was deemed to have notice that its claim might be affected and it ignored the ensuing proceedings to its peril." (citation omitted)).

Under *Espinosa,* the responsibility to object to impermissible plan provisions rests with the creditor if notice is properly given. Additionally, courts are obligated to ensure that the plan "complies with the provisions of Chapter 13 and with other applicable provisions of this title." *Espinosa,* 559 U.S. at 277 (cleaned up). Courts have applied *Espinosa* broadly in situations where chapter 13 plans are mistakenly confirmed containing provisions violating the Code including modification of rights in violation of § 1322(b)(2) and (c)(2). *See, e.g., In re Edwards*, 603 B.R. 516, 523-24 (Bankr. S.D. Fla.), *as amended* (May 22, 2019); *Smith v. Rushmore Loan Mgmt. Servs., LLC (In re Smith)*, 575 B.R. 869, 879 (Bankr. W.D. Ark. 2017); *In re Shank*, 569 B.R. 238, 249 (Bankr. S.D. Tex. 2017).

As in *Espinosa*, Paventy's plan specifically identified the plan treatment in question—in this instance the reduced interest rates. USDA did not object to plan confirmation or appeal the plan confirmation order. In fact, USDA never even attempted to obtain relief under Civil Rule 60(b)(4), as the creditor did in *Espinosa*. Instead, USDA—and the bankruptcy court—reasoned that

the anti-modification provisions in the Code and in the form plan automatically nullified Paventy's other plan provisions. In essence, the court found the standard plan language to be self-executing. But the plan provisions mirroring § 1322(b)(2) and (c)(2) merely incorporate the statutory prohibitions into the plan text. The standard plan language at issue was instructive in nature and provided no substantive authority beyond § 1322(b)(2). Most importantly, no explanation has been provided as to how the standard plan provisions can be any more effective than the statute they serve.

*Espinosa* acknowledged that courts sometimes make mistakes in confirming plans that should not be confirmed. Unless that mistake is jurisdictional, however, creditors are bound by confirmation orders mistakenly entered. *See Espinosa*, 559 U.S. at 271. Paventy thought she could modify the interest rate because she was paying the outstanding balance in full. She was wrong. However, as in *Espinosa* this was merely a legal error not affecting jurisdiction. Instead, it is the creditor's obligation to object to plan treatment that violates its rights. USDA is no different than the creditor in *Espinosa*. Nor can courts, or creditors, avoid their obligations to address problematic plan provisions at confirmation by relying on statutory prohibitions incorporated into the standardized plan text. The standard plan provisions are no more self-executing than the statutes they serve. Accordingly, I would reverse the bankruptcy court's decision that *Espinosa*

did not govern USDA's failure to object to Paventy's plan treatment of its interest rate.[8]

## C.  Paventy discharged USDA's outstanding loan balance.

USDA believes that its outstanding loan balance, calculated at the contract rate of interest, survived Paventy's discharge. It has argued that because Paventy owed a long-term debt the loan survived the discharge, and the balance remains collectible. This misstates the applicable law. Section 1328(a) governs the discharge in chapter 13, which generally discharges all debts provided for by the plan subject to four exceptions. The relevant exception here excepts from discharge those debts provided for under § 1322(b)(5). § 1328(a)(1). In turn, § 1322(b)(5) authorizes debtors to propose plans that "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." In sum, § 1328(a)(1) excepts from the chapter 13 discharge that portion of a long-term secured debt scheduled to

---

[8] USDA also cited a standard plan provision giving supremacy to the "amount" and "classification" of a claim set forth in a proof of claim over that specified in the plan. USDA has argued that the contractual interest rate of 8.75% noted in its proof of claim controls over the interest rates stated in Paventy's plan. Even if USDA is correct, it cannot lie in wait over five years. The plan proposed to pay USDA in full over five years. There was never any objection from USDA even when the chapter 13 trustee gave notice that the plan had been completed. This necessarily gave notice to USDA that the debtor and trustee believed USDA had been paid in full pursuant to the confirmed plan and discharge would be entered. Again, USDA did not object and is bound by the consequence that all amounts owed on its outstanding loan balance were paid in full under the plan.

mature after the plan period **if** the debtor seeks to cure the loan's prepetition arrears and stays current on the postpetition payments that come due during the plan. *See generally* 8 *Collier on Bankruptcy* ¶ 1322.09[1] (Richard Levin & Henry J. Sommer eds., 16th ed. 2022) ("A long term debt dealt with by the chapter 13 plan in the manner authorized under section 1322(b)(5) is excepted from any discharge granted under section 1328, and the creditor's lien remains intact, except to the extent it may have been declared void pursuant to section 506(d)." (footnotes omitted)). Importantly, "[n]ot all long-term debts are entitled to be excepted from discharge . . . but only those debts which the debtor wishes to continue treating as long-term debts." *In re Chappell*, 984 F.2d 775, 780 (7th Cir. 1993) (quoting *In re Smith*, 8 B.R. 543, 547 (Bankr. D. Utah 1981)).

USDA has also observed that it is a secured creditor and liens generally survive bankruptcy. *Johnson v. Home State Bank,* 501 U.S. 78, 82-83 (1991). While this is a correct general statement of the law, it ignores the significance of confirmation and Paventy's performance of the chapter 13 plan discussed above. Paventy did not seek to strip USDA's lien. Rather, she proposed to pay its claim in full through her plan. In this instance, the lien continues to secure the contingent Subsidy that was excluded from USDA's claim within the bankruptcy. But the lien only follows the debt. *Carpenter v. Longan*, 83 U.S. 271, 275 (1872). USDA was afforded every opportunity to raise the issue of full payment of its claim during the course of Paventy's plan. It failed to do so. It is simply too late now.

*Chappell* is instructive. The debtors' plan proposed to accelerate the loan and pay their secured creditor in full on its two secured claims during the course of the plan. 984 F.2d at 777. However, the amount debtors proposed to pay on account of the second mortgage only included the principal balance and excluded interest or other charges and fees that accrued during the plan term. *Id.* Absent acceleration, the final payment under that loan was not due until well after plan completion. *Id.* As with USDA, however, the secured creditor did not object to plan confirmation or otherwise timely raise its concerns to the bankruptcy court. *Id.* at 777-78. Nor did the secured creditor object to entry of the discharge or to the trustee's final report indicating that the second mortgage had been paid in full. *Id.* at 778.

After the secured creditor commenced foreclosure proceedings post-discharge the parties brought the matter to the bankruptcy court, which held that the second mortgage had been fully discharged. *Id.* at 778-79. The district court affirmed. On appeal to the Seventh Circuit Court of Appeals the secured creditor argued the debt was not discharged pursuant to § 1328(a)(1). The Court of Appeals noted that chapter 13 debtors may elect to cure and maintain a long-term debt under § 1322(b)(5) and except the remaining balance from discharge under § 1328(a)(1), but the debtor had proposed a full payment plan not subject to this discharge exception. *Id.* at 781. The Court of Appeals specifically addressed the secured creditor's argument that it was still entitled to full interest under § 506(b) that had not been paid. The court held that the plan governed what the debtors proposed to pay and was

28

controlling. If the secured creditor believed it was entitled to more than the plan proposed, it could have objected, but it failed to do so. *Id.* at 781-82. As the Court of Appeals explained, the secured creditor "didn't even bring the matter to the attention of the bankruptcy court before the court entered the discharge order and closed the case." *Id.* at 782; *see also Doral Mortg. Corp. v. Echevarria (In re Echevarria)*, 212 B.R. 185, 188 (1st Cir. BAP 1997), *aff'd,* 1998 WL 166146, 141 F.3d 1149 (1st Cir. 1998) (following *Chappell* and holding that secured creditor who filed a proof of claim that did not assert any right to interest or other charges, who did not object to debtor's confirmed chapter 13 plan, and who waited for plan completion before asserting any claim to interest, did not have a claim for interest that survived the discharge).

*Mortgage Corp. of the South v. Bozeman (In re Bozeman)*, 623 B.R. 811 (M.D. Ala. 2020), is another factually analogous case. In *Bozeman*, the secured creditor similarly did not object to debtor's so-called full payment plan, even though the plan only provided for payment of arrearages and not the principal balance due. *Id.* at 813-14. After plan completion, the trustee filed a notice indicating that the debt had been fully paid. The secured creditor then responded to the trustee's notice of final payment. The creditor stated that the principal balance of $15,032.73 had not been paid, its debt remained unsatisfied, and its lien had not been extinguished by the completion of plan payments. At the same time, secured creditor twice amended its claim—first stating an outstanding loan balance of $15,032.73 and later increasing that amount to $22,382. *Id.* at 814. The bankruptcy court ruled in the debtor's

29

favor. It held that upon plan completion, the secured creditor's mortgage had been satisfied and its lien released pursuant to the plan's specific terms. *Id.*

On appeal, the district court affirmed. As the *Bozeman* court explained:

> While MCS repeatedly characterizes the confirmed plan as unlawful and illegal, the plan was objectionable. But no matter how unlawful, illegal, or objectionable the plan may have been, MCS chose not to object to it or appeal; instead, MCS [initially] filed a proof of claim that did not fully, completely or accurately disclose its debt. Sitting on its hands, the full payment plan was confirmed and once confirmed, became binding on MCS, no matter how objectionable it may have otherwise been.

*Id.* at 816-17 (cleaned up). *Bozeman* also rejected the secured creditor's argument that its lien passed through the bankruptcy unaffected. The *Bozeman* court acknowledged that a bankruptcy court generally cannot alter the contract rights of secured creditors. But it observed that it can confirm a full payment plan that specifies the precise amount owed to that creditor. If the creditor disagrees with the amounts specified in the plan, it must object. The creditor cannot wait until plan completion to dispute the amount owed: "[o]nce a plan is successfully completed, including payment of the provided for debt, there is no longer any prepetition debt [or lien] supporting the in rem rights of the creditor." *Id.* at 818.

USDA's situation is reminiscent of both *Chappell* and *Bozeman*. USDA participated in Paventy's bankruptcy by filing its proof of claim. Though Paventy had the option to cure and maintain the outstanding loan balance, she sought to pay the balance in full through her plan instead. USDA

30

understood that. Paventy also unambiguously stated the interest rates to be used to pay USDA's outstanding loan balance. As in *Chappell* and *Bozeman*, USDA had notice of the plan and was afforded multiple opportunities to raise its concerns. This included the chapter 13 trustee's notice of completed plan payments and notice of final report reflecting that USDA had been paid in full. As in those cases, USDA said nothing.

In opposition to the contempt motion USDA argued that the provisions of Paventy's plan were in conflict.[9] The only provision at issue was the applicable interest rate. Paventy clearly stated the rate to be applied, though the reduced rates were prohibited by § 1322(b)(2), and contrary to the instructions in the standard plan. As explained above, this gave rise to objections that were never filed. As a result, the bankruptcy court confirmed a plan that should not have been confirmed. Years afterwards, USDA is not entitled to recast Paventy's plan after it was completed and her discharge entered. Paventy stated how much she would pay to fully satisfy the USDA's outstanding loan balance and paid that amount. If that calculation was wrong, it was incumbent upon USDA to object in a timely manner. It failed to do so and is bound by the consequences. Paventy having fully paid the

---

[9] In contrast to the interest rate, USDA has not argued that acceleration of the outstanding loan balance was an impermissible modification. The loan documents attached to USDA's proof of claim appear to provide Paventy with the option of prepaying the outstanding loan balance. As one leading treatise states, a plan providing for loan acceleration, "would not offend the antimodification provision of § 1322(b)(2) if the mortgage contract itself permits prepayment." Keith M. Lundin, LUNDIN ON CHAPTER 13, § 85.4, at ¶ 8, available at https://www.LundinOnChapter13.com (last visited Oct. 25, 2022); *see also In re Bozeman*, 623 B.R. at 816.

outstanding loan balance pursuant to her confirmed plan, that obligation is satisfied and discharged. There is simply no remaining debt currently outstanding to USDA, except for the contingent Subsidy.

USDA's post-discharge collections efforts, therefore, were done in violation of the discharge order entered under § 1328 and the discharge injunction imposed by § 524(a). For this reason, this Panel should be reversing the bankruptcy court's denial of the motion for reconsideration.

## D.    Fair ground of doubt.

USDA violated the confirmation order and the discharge injunction. However, contempt sanctions against a creditor for violation of the discharge injunction are appropriate only when "there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Freeman v. Nationstar Mortg. LLC (In re Freeman)*, 608 B.R. 228, 234 (9th Cir. BAP 2019) (quoting *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019)). As a result, there is no civil contempt if "there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart*, 139 S. Ct. at 1801.

Where the order is clear and unambiguous, "a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Id*. at 1802. "As a general rule, ignorance of the law, or mistake as to the law, will not operate as an excuse from a charge of contempt, but it may be a mitigating circumstance, as in a case of honest mistake as to the controlling law." 17 C.J.S. Contempt

§ 64. This is because the standard for contempt is an objective one. Therefore, a good faith mistake generally does not preclude contempt. *Taggart,* 139 S. Ct. at 1802; *High Tech Nat'l, LLC v. Charles Stead*, Case No. MC 19-191, 2020 WL 5076796, at *3 (E.D. Pa. Aug. 27, 2020) ("[G]ood faith is not a defense to civil contempt." (quoting *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994))); *In re Freeman,* 608 B.R. at 234. The Supreme Court has recognized, however, that subjective intent is not always irrelevant and may be a factor in assessing any sanctions. *Taggart*, 139 S. Ct. at 1802.

The record arguably suggests that USDA mistakenly understood, or failed to appreciate, the significance of Paventy's plan treatment and her discharge. USDA contends that the standard language of Paventy's plan prohibiting reduction of its contract interest rate created a fair ground of doubt whether any amounts were still owed after entry of her discharge. Similarly, it contends that this conflict also was a fair ground to believe that it could attempt to collect any balance post-discharge, though it is unclear how this affects the dischargeability of the debt. There is nothing in the record provided to suggest that the bankruptcy court considered whether a fair ground of doubt supported USDA's post-discharge collection efforts. Rather, the court's denial of reconsideration held that such efforts did not violate either the confirmation order or the discharge. Therefore, I would reverse the bankruptcy court's denial of Paventy's reconsideration motion, and remand for further consideration of the fair ground of doubt issue.

Accordingly, I DISSENT.